# Douglass v. City Council of Montgomery.

*Bill in Equity to enjoin the Municipality from diverting a Public Park from the Uses to which it was originally Dedicated.*

1. *Municipal corporations own public parks in trust; not authorized to divert it from uses to which it was dedicated.*—Municipal corporations hold titles to streets, public squares and parks in trust for the public; and where lands have been dedicated and used for a public park, or square, the municipality has

[Douglass v. City Council of Montgomery.]

no power, unless specially authorized by the legislature, to sell such lands for its own benefit, or to appropriate them for the use and benefit of private persons or corporations, or in any way to divert them from the uses to which they were originally dedicated.

2. *Same; what constitutes a dedication of land to use as a public park.*—Where the owner of land, in conveying it to a city, provides in the deed of conveyance that said land shall be used only as a park or street, and if used otherwise it should revert to him or his heirs, and subsequently the city, by ordinance, set apart and dedicated said land to the public use as a public park, and had it inclosed and improved, there is a dedication of such lands as a public park, as much so as if the use for such purpose had been unconditionally engrafted in the deed at its execution, and the public became thereby invested with dedicated rights and interest; and, therefore, an act on the part of the municipality, by which there is a diversion of said lands from the uses to which they were dedicated, is a violation of the trust, and a wrong from which no right can accrue to any one who claims in consequence of such act.—(COLEMAN, J., *dissenting.)*

3. *Same; right of adjacent property owner to enjoin the diversion of a park from the purposes of its dedication.*—The owner of property adjacent to lands which have been dedicated and used as a public park, in a city, can maintain a bill in equity to enjoin the abandonment by the city of such lands as a public park, and the diversion of them from the uses to which they were originally dedicated; and one who owns a lot, which is one hundred and ten feet distant from such park, and from which there is an open and unobstructed view of the park, is such an adjacent proprietor, and can maintain such bill.—(COLEMAN, J., *dissenting.)*

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JERE N. WILLIAMS.

The appellant, James Douglass, a resident citizen and tax-payer of Montgomery, Alabama, filed the present bill to have declared null and void two ordinances adopted by city council of Montgomery, one granting to the Belt Line Railway Co. the right to lay a railroad track across "Gilmer Park," and the other granting said park to the Alabama Midland Railway Co., and to enjoin said companies from exercising the rights thereby sought to be conferred.

Complainant claimed the right to maintain his bill because (1) he was a resident citizen and taxpayer of Montgomery, and (2) he had by the adoption of said

ordinance, and would by the exercise of the rights conferred thereby, suffer special irreparable injury. He also alleged, substantially, that "Gilmer Park" had been purchased by the city council of Montgomery in 1850, to be used only as a street or common, and if used otherwise to revert to the heirs of its grantor; that it had lain out as an open common until 1877, when it was, by formal ordinance, dedicated as a public park or pleasure ground, and then inclosed and improved, in which state it remained until seized by said Alabama Midland Railway Co. on January 20, 1897, claiming right thereto under said ordinances. The other facts of the case are sufficiently stated in the opinion.

The bill was filed on March 8, 1897, and an injunction was issued on that date on the fiat of the judge of the city court. The City Council of Montgomery, the Alabama Midland Railway Company and the Belt Line Railway Company are made parties defendant.

On the submission of the cause on the defendant's motions to dissolve the injunction and to dismiss the bill for the want of equity, the chancellor rendered a decree ordering the injunction dissolved and the bill dismissed for want of equity. From this decree the complainant appeals, and assigns the rendition thereof as error.

FRED S. BALL and W. S. THORINGTON, for appellant. The City Council of Montgomery had no legal right, power and authority to grant the Belt Line Railway Company the right to lay and operate a railway track across said park. "Municipal corporations hold the title to streets, alleys, public squares, wharves, &c. in trust for the public."—15 Amer. & Eng. Encyc. of Law, 1064, and authorities; *Harn v. Dadeville*, 100 Ala. 199; *Webb v. Demopolis*, 95 Ala. 116; *Avondale v. Avondale*, 111 Ala. 523; *Commonwealth v. Rush*, 14 Pa. St. 186; *Ransom v. Boal*, 29 Ia. 68; *Warren v. Lyons City*, 22 Ia. 351; *Alton v. Trans. Co.*, 12 Ill. 38; *St. Paul v. Railway Co.*, 34 L. R. A. 184; *Morris v. Imp. Co.*, 38 N. J. Eq. 304, and note; *Church v. Hoboken*, 33 N. J. L. 13. The general principle is, that property which the municipal corporation holds in trust for the public, such as streets, public squares, &c. can only be used for the purpose for which it was dedicated.—15 Amer. & Eng. Encyc. of Law, 1068; *Ransom v. Boal*, 29 Ia. 68; *Warren v. Lyons*

*City,* 22 Ia. 351; *St. Paul v. Railway Co.,* 34 L. R. A. 184; *Morris v. Imp. Co.,* 38 N. J. Eq. 304, and authorities. The city council has only such power and authority as has been conferred upon it by the legislature as expressed in its charter, and its charter must be strictly construed.—*R. R. Co. v. Dunn,* 51 Ala. 128; *Mayor v. Wetumpka,* 63 Ala. 611. The city council can not grant a railroad right of way over a public park, except by express legislative authority in each particular case. *Jacksonville v. Railway Co.,* 67 Ill. 540; *Price v. Thompson,* 48 Mo. 361; *St. Paul v. Railway Co.,* 34 L. R. A. 184.

The city council had no power and authority to grant said park to, or confirm the title to the same in, said Alabama Midland Railway Company. Judge Dillon, in 2 Dill. Mun. Corp, (4th ed.), §650, says: "A municipal corporation has no implied or incidental authority to alien, or to dispose of, for its own benefit, property dedicated to or held by it in trust for the public use, or to extinguish the public uses in such property, nor is such property subject to the payment of the debts of the municipality." Again, he says, municipal corporations "cannot, of course, dispose of property of a public nature, in violation of the trusts upon which it is held, and they can not, except under valid legislative authority, dispose of the public squares, streets or commons." *Ib.,* §575. The rule is abundantly supported in *Webb v. Demopolis,* 95 Ala. 116; *Morris v. Imp. Co.,* 38 N. J. Eq. 304, and authorities; *Commonwealth v. Rush,* 14 Pa. St. 186; 15 Amer. & Eng. Encyc. of Law, 1064, and authorities. "Although the legal title to a public square in a city is vested in the corporation, it holds subject to the trusts in favor of the community, and is but the conservator of the title and soil, and has no power or authority to sell and convey the same for private purposes." *Commonwealth v. Rush,* 14 Pa. St. 186. In support of these principles, see also Dillon on Municipal Corporations, (4th ed.), §575, and authorities; *Alton v. Trans. Co.,* 12 Ill. 38; *Morris v. Imp. Co.,* 38 N. J. Eq. 304, and note; *Commonwealth v. Rush,* 14 Pa. St. 186; 15 Amer. & Eng. Encyc. of Law, 1064, and authorities.

The City Council had not so violated the terms of its original purchase as to cause a reversion of said park to said Alabama Midland Railway Company as the owner

of said reversionary interest. The illegal and void attempt to make the grants of January 13, 1897, will not be held to be such a violation or diversion of the trust. The bill alleges that "said park has never been used for or devoted to any other purpose or use than that for which it was granted by the said Gilmer, as stipulated in said conveyance" of 1850. The truth of this allegation must be considered, on this motion, as admitted. Again, it alleges that it has been used as a park or common from 1850 down to the time of the wrongful entry of appellee companies in 1897.

That a court of chancery has jurisdiction and may use its writ of injunction has been settled beyond controversy. If there is any wrong in this cause the remedy must be in the court of chancery, for "no plain and adequate remedy is provided in other judicial tribunals." Courts of chancery have, from their beginning, taken jurisdiction of trusts to restrain breaches and compel their proper execution. Injunction is a part of the remedy, and the jurisdiction is exclusively theirs.—High on Injunctions, (2d ed.), §855; Dillon on Mun. Corp., (4th ed.), 567; 5 Grant. Rep. (Can.) 402; 4 Grant. Rep. (Can.) 654; Harr Mun. Man., (5th ed.), 350; 2 Dillon on Munic. Corp., (4th ed.), §567, and authorities; *Kennedy v. Jones,* 11 Ala. 63; *Warren v. Lyons,* 22 Ia. 351; *Ransom v. Boal,* 29 Ia. 68; *Morris v. Imp. Co.,* 38 N. J. Eq. 304, and note; *State v. Mobile,* 5 Port. 279; *Forney v. Calhoun Co.,* 84 Ala. 215.

A resident citizen, property owner and tax-payer of the city, may maintain his suit as herein. "If dedicated property be put to a use foreign to that contemplated by the intention and purpose of the dedication, then not only the dedicator, but any property owner will have his remedy in equity to enforce the proper use and inhibit an improper one."—5 Amer. & Eng. Encyc. of Law, 418; *Maywood Co. v. Maywood,* 118 Ill. 61; *Princeville v. Auten,* 77 Ill. 325; *Ransom v. Boal,* 29 Ia. 68; *Brockman v. Creston,* 79 Ia. 587; *Street Railway Co. v. Rand & Moore,* 83 Ala. 294; *Morris v. Imp. Co.,* 38 N. J. Eq. 304, and note.

But, if the last proposition goes too far, there can be no question that a resident citizen and taxpayer, living and owning property near the park, and suffering special irreparable injury in his personal or property

rights, may maintain his suit to enjoin the cause of such injury. Going deeper, then, than the surface, we find the true test to be, not ownership of fronting property, but injury to the party's property rights different from that of the body of the inhabitants. The following cases put this view beyond controversy: *Tifft v. Buffalo,* 65 Barb. 460; *Chicago v. Union Bd'g Assn,* 102 Ill. 376; *Morris v. Imp. Co.,* 38 N. J. Eq. 304, and note; *Forney v. Calhoun County,* 84 Ala. 215. See also *Green v. R. R. Co.,* 12 Abb. N. Cas. 124; *Williams v. Water Co.,* 134 Mass. 406; *Perrin v. R. R. Co.,* 40 Barb. 65; s. c. 36 N. Y. 120; *Sherer v. Jasper,* 93 Ala. 530; *Avondale v. Avondale,* 111 Ala. 523.

A. A. WILEY and CHAS. WILKINSON, *contra.*—The unbroken chain of authorities hold that before a taxpayer can restrain by process of injunction the vacation or abandonment of any park or street, in any event, he must aver and prove, 1st, that he is an abutting property holder; 2d, that he has a special interest or equity in the park or street thus vacated or abandoned; 3d, that he has sustained a special and irreparable injury different or distant from that which the other taxpayers of the vicinity have suffered.—High on Injunctions, §§594, 595, 1301, 1302; *Hesing v. Scott,* 107 Ill. 600; *Tifft v. Mayor &c. of Buffalo,* 65 Barb. 460; *Chicago v. Un. Bldg Asso.,* 102 Ill. 376; *Roscvelt v. Draper,* 23 N. Y. 323; *Doolittle v. Supt. of Brooms,* 18 N. Y. 155; *Ayers v. Lawrence,* 63 Barb. 458; *McDonald v. English,* 85 Ill. 236; *Brady v. Shinkle,* 40 Iowa, 576. Complainant Douglass is not an abutting property holder. The best that can be claimed for him is that he owns lands in the vicinity of said park.

It has been held that an estate opposite a park, separated from it by a country road, is not an abutting estate.—*Holt v. City Council,* 127 Mass. 408. A lot can not be said to front on a public road when a railroad, the bed of which is owned by the company, runs between the lot and the road.—*Philadelphia v. Eastwick,* 35 Pa. St. 75; *Tifft v. Mayor &c.,* 65 Barb. 460.

Complainant does not show any special interest in said park; nor that he has been damaged in any manner different from the injury the general public has sustained.—*Chicago v. Un. Bldg. Asso.,* 102 Ill. 379. There-

[Douglass v. City Council of Montgomery.]

fore, the complainant has shown no right to maintain the present bill.—*Hesing v. Scott,* 107 Ill. 600; *McDonough v. English,* 85 Ill. 236; *Rosevelt v. Draper,* 23 N. Y. 323; *Brady v. Shinkle,* 40 Iowa, 576.

An interference with a right enjoyed simply and solely as *one* of the public is not actionable except when such interference deprives an individual of some right different in kind from the one enjoyed by the rest of the world. A court of equity will not exercise its powers simply to remove an obstruction in a public highway, park or square, upon the complaint of an individual, who has no interest in the removal differing in kind from the rest of the public.—*Rickett v. Railway Co.,* L. R. 2 H. L. 175; *Duke v. Board of Works,* L. R. 5 H. L. 418; *Board of Works v. McCarthy,* L. R. 7. H. L. 252; *Attorney-General v. Conservators,* 1 H. M. 1; *Bell v. Quebeck,* L. R. App. Cas. 100.

The motive which influenced the city council to pass the ordinance vacating and abandoning Gilmer Park, can not be inquired into.—*Fletcher v. Peck,* 6 Cranch, 129; *Railroad Co. v. Mayor,* 1 Hilton, 588; *Buell v. Ball,* 20 Ia. 292; *Jones v. Loving,* 55 Miss. 190; *Payne v. Boston,* 124 Mass. 190. The city council, in adopting the ordinances in question, acted in the capacity of a legislative body under power conferred by their charter, and when thus adopted, they had the force and effect of laws enacted by the State legislature.—*People v. Reynolds,* 4 Gilm. 14; *Tugman v. Chicago,* 78 Ill. 410; *Montgomery G. L. Co. v. City Council,* 87 Ala. 25. The legislature having conferred upon the city council, under their charter, the power to authorize the building of railroads within the city upon any street, public highway or through any park, that which will best promote the public welfare must, in a great degree, be left to the wisdom and discretion of that body.—*Mayor's Case,* 5 Port. 279; *Peters v. Railroad Co.,* 56 Ala. 528.

The power of the city council to vacate a street or public park is a discretionary power, to be exercised or not as the public good may require; and the city council is necessarily the sole judge of the necessity for, and the expediency of, the exercise of the power.—Dillon on Munic. Corp., (3d ed.), 945; *Goodrich v. Chicago,* 20 Ill. 445; *Spiegel v. Grusberg,* 44 Ind. 418; *Gray v. Iowa Land Co.,* 26 Ia. 387; *Glazer v. Georgetown,* 6 Wheat.

593; *Ins. Co. v. Lynch,* 3 Paige, 212; *Sugar Ref. Co. v. Mayor,* 11 Green. 250; *DesMoines Gas Co. v. DesMoines,* 44 Iowa 505; *Wells v. Mayor,* 46 Ga. 67; *Danielly v. Cabaniss,* 52 Ga. 213; *Baker v. Boston,* 12 Pick. 192.

HARALSON, J.—It is stated in 15 Am. & Eng. Encyc. of Law, 1064, that "Municipal corporations hold the title to streets, alleys, public squares, wharves, etc., *in trust* for the public; and upon principle, such trust property can no more be disposed of by the corporation than can any other trust property held by an individual." In the note to the text, many decisions are cited in support of the principle stated. So, it has been held, that trustees of a town have no authority to convey streets, alleys or public grounds, and such conveyances are absolutely void.—*Giltner v. Trustees of Carrollton,* 7 B. Monroe, 680; *Morris v. Improvement Co.,* 38 N. J. Eq. 304, and authorities there cited; *Harn v. Common Council,* 100 Ala. 200; *Webb v. City of Demopolis,* 95 Ala. 116. In the case last cited, which had reference to a public street—over which, in general, the city has greater authority in the matter of the direction of the uses to which it may be subjected than it has over a public park—it was said: "The city never had any alienable title to or right in the street. It could never have granted it, or any part of it, away, for any purpose whatever. Having no power of direct alienation, it could not pass title directly by submitting for the statutory period to private possession, claim and use."

Judge Dillon states the rule to be, that "municipal corporations possess the incidental and implied right to alienate or dispose of the property, real or personal, of the corporation of a *private nature,* unless restrained by charter or statute; they can not, of course, dispose of property of a *public nature,* in violation of the trusts upon which it is held, and they can not, except under valid legislative authority, dispose of the public squares, streets, or commons."—2 Dillon on Munic. Corp., §§575, 650, and numerous authorities cited. Another phase of the rule should be added in this connection, as we find it stated in the Encyclopedia: "When lands, held by a municipality for public use, are not subject to any special trust, the legislature may authorize a municipal corporation to sell and dispose of the same, or to apply

them to uses different from those to which they are devoted; but in the absence of such authority, the municipality has no implied power to do so. * * If, however, the lands have been dedicated by private individuals for a public park or square, the legislature has no authority to authorize any diversion from the uses to which they were originally dedicated."—17 Amer. & Eng. Encyc. of Law, 417, and authorities.

In this case, on the 17th of September, 1850, F. M. Gilmer and his wife, in consideration of three hundred dollars paid to said Gilmer by the city council of Montgomery, sold and conveyed to said city council a piece of land in said city, the subject of this suit, which is particularly described in the conveyance, and is called "Gilmer Park." The conveyance contained the condition: "Said lands to be used only as a common or street; if otherwise, to revert to me or my heirs." Neither the park, nor any portion of it, has ever been devoted to street purposes; but, on the 19th February, 1877, as alleged, the city council of Montgomery, by ordinance, set apart and dedicated to the public use, as a public park or pleasure ground, the lands conveyed to them by said Gilmer, known as "Gilmer Park," which ordinance is still of force. It is further alleged, that shortly after the adoption of said ordinance, the said city council caused the said Gilmer Park to be inclosed with a fence, and caused a number of trees to be planted on or about it, and from that time down to about the 20th January, 1897, the said park remained inclosed, and was held and treated and used as a park, for the use and benefit of the inhabitants of the city of Montgomery, etc.

The said F. M. Gilmer died, leaving a widow and two children. The defendant, The Alabama Midland Railway Company, purchased from his widow and these two children, for the recited consideration of $300, all their right, title, interest and reservation in and to the lands known as the "Gilmer Park." This company, according to the allegations of the bill, and as appears to be true, for the purpose of promoting its terminal facilities and its connection with the Mobile & Ohio Railroad Company, induced the city council of Montgomery, by ordinance, to grant to the Belt Line Railway Company—a local company in the city—the right to put down and

operate an additional main line track through Gilmer Park, etc.; and, also, to adopt another ordinance at the same time—both ordinances having been prepared, as alleged, by the counsel of the Alabama Midland Railway Company, and introduced, adopted and approved on the same days. Manifestly, these ordinances constitute but one transaction, designed for the same purpose. The two might as well have been adopted as one. The latter ordinance, after reciting the sale by Gilmer of said park to the city; the purpose of its conveyance; the condition of its reversion to his heirs; the purchase of the reversionary interest of the heirs of Gilmer by said Alabama Midland Railway Company, contains this further recital, by way of preamble: "And whereas, the exigencies of public business and the necessity of better transportation facilities have induced the city council of Montgomery to grant to the Belt Line Railway Company the right and privilege of laying down a railway track through, over and across said triangular park, otherwise called the 'Gilmer Park,' and to run and operate a dummy steam engine and cars thereon, thereby destroying the said parcel of land as a public park, and thereby causing a reversion of said realty to its rightful owners; Now, therefore, and for the purpose of abandoning in some public and authoritative manner, the use of said land as a public park, be it, therefore, ordained by the city council of Montgomery, that said city council of Montgomery hereby abandons and discontinues the use of said ground or parcel of land as a park and for all other purposes; and hereby confirms, as far as the city council of Montgomery is able to do, the right, title, claim and interest of the said Alabama Midland Railway Company, its successors and assigns therein and thereunto forever.    Adopted Jan. 13, 1897. Approved Jan. 18, 1897."

There is no disguise about these ordinances. The city authorities openly abandoned whatever trust obligation had been imposed on them by the deed of Gilmer to the park, and their own act of dedication by said ordinance of the 19th of February, 1877, by which act of abandonment, as was supposed, the title would revert to the Gilmer heirs, whose reversionary interest, if they had any, the said Alabama Midland Railway Company had bought up. The effort was to invest the railroad

company with a title to the property, by means of this violation of the trust of the city. The city authorities were induced into the scheme, by what, it is stated, appeared to them to be the necessity of better transportation facilities and the exigencies of the public business. We must acquit all engaged in this scheme of any intentional fraud upon the rights of the public; the one side, in procuring, and the other in yielding to, an abandonment of a public trust for another supposed public benefit. But, yielding to them a good and honest intention, what was accomplished, according to the authorities, was an illegal transaction and a fraud in law. The condition inserted in his deed by Gilmer, for a reversion of this property to him and his heirs, if the land should be used otherwise than as a common or street, was inserted, not as a provision to enable the city authorities to abandon or divert it at will, if accepted for the purposes intended, but to prevent their doing so. It was not a license for the violation of the trust tendered, if assumed, but a prohibition against such a violation. It is true, the deed did not make a positive dedication of the land for the purposes named, and it is also true, that the conveyance was made for a recited consideration of $300, and is, in form, a fee simple title, containing the condition for reversion, if the land conveyed should be used otherwise than as a street or common. Without such condition, it may be, the price for the land would have been much greater. Certainly such a condition in any deed tended to impair the value of the lands conveyed. It was an incumbrance on a free title. We know of no rule which prevents a dedication to uses from being engrafted on a fee simple title conveyed for value, nor do we know of any rule which prevents the engrafting of a conditional dedication to uses in such a conveyance; the dedication to be completed and irrevocable on the acceptance of the conveyance with the conditions imposed. If it had been recited in said deed, that the city had agreed to accept the conveyance on the conditions imposed, and had by ordinance set apart and dedicated the land to the public for the uses prescribed, as a consideration for procuring the conveyance, could it be doubted that the conveyance on such terms would have been less than a dedication, and that its character as such would have been destroyed, because of a condi-

tion in the conveyance, that if the grantee violated ·the terms of the deed in this regard, the property should revert to the heirs of the grantor? It is not left open to doubt, that there had been negotiation on the part of the city with Gilmer for the procurement of this land, and as to the purposes for which it was to be procured. Gilmer did not desire the property ever to revert. The clause referred to in his deed was not inserted in his interest or that of his heirs, but in the interest of the public, and was as strong as he could devise to prevent, in the future, an abandonment of the trust he reposed in his trustee for uses,—the city of Montgomery. The city elected to accept the trust as, and for a dedication for a public park, as is evidenced by their said ordinance to that effect, adopted the 19th February, 1877. In their said ordinance, they recited: "Whereas, some of said parcels (referring to certain small tracts or parcels of land in a triangular shape) were granted to the city on condition and in trust that they should be devoted to public use as parks or pleasure grounds, and whereas, the health and comfort of the citizens and the best interests of the city will be promoted by converting the said parcels of lands into parks and pleasure grounds," therefore, be it ordained, etc.; followed by a dedication of said park to the public use as a park or pleasure ground. After this, the conveyance of Gilmer became operative as a dedication, as much so as if such a use had been unconditionally engrafted in the deed at its execution. The public became thereby invested with dedicated rights and interests. The trustee violated the trust, and aided in diverting the dedicated property from its uses, to a purpose forbidden by the dedication. This was a wrong from which no right could accrue to any one who claims in consequence of such an act.

It remains to inquire, if the complainant is such a party as can maintain a bill to enjoin the abandonment and destruction of this park. He may not be an abutting owner, strictly speaking. He owns two lots on the west side of Catoma street; the first, next to and adjoining an abutting owner, who owns a small lot between him and the street in front of the park. From the front of complainant's door, diagonally across the street, on the left, to the park, it is 110 feet,—open and

unobstructed. He also owns another lot, on the same side of said street, with an intervening lot between it and the first one referred to, 250 feet from said park.

Ordinarily, the city is the proper party to redress a wrong of the character here complained of; but in this instance it is the main actor in the commission of the wrongs complained of, for the abandonment and destruction of the park. It is to be presumed, it would not file a bill to declare void an act which, by solemn ordinance, it had itself just done. Individuals damaged by such action, therefore, were driven to private action for the maintenance of any rights they had in the premises.

There are authorities which hold, that non-abutting property owners upon a square or park can not complain of its being closed by municipal authority; but with such a doctrine, if necessary to decide, we might not agree. There is a marked difference between the uses and trusts as ordinarily imposed in the dedication of streets or highways in a city, and those imposed in the dedication of public squares or commons, and in the uses and enjoyments of the people therein. The municipality may allow uses in the one that it can not in the other. The uses of each are distinct, and the rights of abutting proprietors on each are different. It is allowed, generally, that such a proprietor as to a street owns to its centre, but there is no such right, or anything accruing from it, in an abutter on a park. The street must be kept open, as long as used, but the park may be enclosed, improved and ornamented for pleasure grounds and amusements for health and recreation.—17 Amer. & Eng. Encyc. of Law, 416. In speaking of this difference between the rights of property owners attingent to a street and a public common, dedicated to public uses, this court, in *Shef. &c. Street Ry. Co. v. Rand & Moore,* 83 Ala. 294, said the rule of law was entirely different when applied to the two; that "the purpose to which such dedication is made, the use or changing uses to which it may be applied, and many other distinguishing characteristics, demonstrate that neither the rule nor the reason of the rule, on which the law of the street or highways rests, can be made applicable to a public common. The differences will naturally suggest

themselves, and we need not attempt their enumeration."

In respect to the remedy for the misuse or diversion of such property, it has been said: "If dedicated property be put to use foreign to that contemplated by· the intention and purpose of the dedication, then not only the dedicator, but any property owner, will have his remedy in equity to enforce the proper use, and inhibit an improper one."—5 Amer. & Eng. Encyc. of Law, 416, and authorities there cited.

In *Maywood v. Village of Maywood*, 118 Ill. 61,—a bill filed by the village and Small and Hubbard, residents therein, to prevent obstructions to a public park, —it was said: "The objection of multifariousness or misjoinder of complainants we do not regard as well taken to the bill. Small and Hubbard, as residents of the village, have a common interest with each other and with the village itself, in preventing any obstruction to the use of the public square for the purposes of a park. * * * * Again, the evidence shows a threatened nuisance tending to deprive appellees and others of the full and free use of this park, as they were entitled to have it used. This is a well recognized ground of equitable interposition."—*Zearing v. Raber*, 74 Ill. 409. When a dedication of land for a public park is made by or to a town or city, it enures to the benefit of all who are at the time, or may afterwards become citizens of the muncipality, which holds in trust for the benefit of the public, with no power to convey or divert it to other uses. This right of use belongs equally not only to lot holders of the corporation, but to all the inhabitants in the future as well as at present, according to their various necessities or conveniences.—*Mayor v. Franklin*, 12 Ga. 239; *Alves v. Town of Henderson*, 16 B. Monroe, 131, 169; *Campbell County v. Town of Newport*, 12 B. Monroe, 541; *Pomroy v. Mills*, 3 Vt. 279; *Commonwealth v. Rush*, 14 Penn. St. 186; *Carter v. City of Portland*, 4 Ore. 346; *Alton v. Ill. Trans. Co.*, 12 Ill. 38; *Quincy v. Jones*, 76 Ill. 231; *St. R. Co. v. Rand and Moore*, 83 Ala. 294; 2 Beach on Injunc., §1279, and authorities cited in n. 1.

It is unnecessary, perhaps, for us to decide in this case, that *any* resident tax-payer in a city or town may maintain a bill to enjoin a diversion and abandonment

of grounds dedicated for a public park, to the use of individuals and corporations for their own private use and advantage, in interference with or destruction of the rights of the public therein. It appears, however, that reason and authority are not wanting for such a holding. In these days of rapid and cheap transit in cities and towns, brought about by the applications of steam and electricity, it would seem that every resident property holder of the municipality occupies, in a sense, the position of an adjacent owner to its public parks, dedicated to public use, and is clothed with all the valuable rights and interest in such dedications, as the one whose property abuts upon them. These parks, by these means, are the great resorts for health and recreation by all the inhabitants of the municipality, valuable and beneficent in their advantages to all alike. The one living remote is borne in a few minutes, at the cost of a trifle, to and from these grounds, and derives as much rest, recreation and profit, from their existence, as the one in closer proximity may enjoy. When the hand of vandalism and destruction is laid upon them, by the municipality itself or by strangers, it is difficult to understand, upon what principle, any individual property owner, without respect to where he lives in the city or town, may not himself invoke injunctive relief against their destruction or misuse when perpetrated by the municipality, or join it for such relief against such acts when done by others. If there ever existed any good reason why such relief should be invoked alone by an abutting proprietor, it may be that it must give way, in accommodation to the necessities and conditions of modern life, brought about by the wonderful discoveries of the present age.

But, we find no difficulty in holding, that the complainant in this case is in reason, and for the purposes of this case, an adjacent proprietor to the said park, and occupies such a position as entitles him to maintain this bill. He can look out from the front of one of his houses, with an unobstructed view, on to the park, a distance of only 110 feet from him. This gives him the attitude of an adjacent proprietor. From his other lot, the view is obstructed, though it is only 250 feet from the park. For the purposes of air and recreation, he

has shown he has a direct and special interest against its proposed destruction.

The cause was submitted on a motion to dissolve the injunction theretofore granted, and on motion to dismiss the bill for want of equity. The court by its decree dissolved the injunction, and dismissed the bill for want of equity. In this there was error.

The decree is reversed, and the cause remanded.

COLEMAN, J., *dissenting.*—This cause was submitted to the chancery court on a motion by respondents to dissolve an injunction, and on a motion to dismiss the bill for the want of equity. The chancellor granted the motion to dissolve the injunction, and dismissed the bill for want of equity. From the decree dissolving the injunction and dismissing the bill the present appeal was prosecuted by the complainant, and the correctness of this decree presents the only question for review. This court has no jurisdiction to render a final decree, granting relief to complainant upon the present appeal. A motion to dismiss a bill for want of equity cannot perform the office of a demurrer. On such a motion all amendable defects will be considered as made. The material questions are, has the bill equity, and if the averments of the bill show a state of facts, which justify relief, can the bill be maintained by the complainant? The purpose of the bill is to enjoin the respondent railroads from laying tracks upon and across a plat of land in the city of Montgomery designated as "Gilmer Park," and to set aside and annul certain ordinances of the city, by which the respondent railroads were authorized to make such use of said plat of ground. The rule is general and well established, that a municipal corporation has no power, unless specially authorized by the legislature, to sell for its own benefit, or to appropriate for the use and benefit of private persons or corporations a public park or common; and if this was the only question involved, we would have little difficulty in reaching a conclusion. The question presented is, whether Gilmer Park was held by the city of Montgomery, upon such terms and conditions, as to justify the application of the general rule to the case at bar; and, secondly, whether a municipal corporation, when it has once appropriated a plat of ground as a public park, is

compelled to maintain it as such for all time, although by reason of circumstances and changed conditions, it is no longer adapted to or is useful for such purposes. It is probable, that the latter question more properly arises upon the motion to dissolve the injunction upon the denials of the answer.

Francis M. Gilmer sold and conveyed to the city of Montgomery said plat of land for three hundred dollars, and the deed of conveyance provides that "said lands to be used only as a common or street, *otherwise to revert to me or my heirs.*" We italicize. This conveyance is not a dedication to the city, nor did the city acquire an absolute, unconditional title and estate in the land. In our opinion, the legislature would be powerless to authorize the city to sell the plat of land so as to convey a title to a purchaser. Much less without such authority could the city sell or appropriate it to other purposes than for a street or common.—2 Dillon Munic. Corp., §651, and note. The land belonged to Gilmer. He had the right to dispose of it on such terms and for such purposes as he saw proper, not inconsistent with any law or the public good. The provision in the deed, "said lands to be used only as a common or street, otherwise to revert to me or my heirs," was as much a part of the consideration for the sale and conveyance as the three hundred dollars. A dedication after it becomes effective is irrevocable. An easement may be legally abandoned. The fee is then released from the burden of the easement, and the owner becomes possessed as before the dedication. No court, nor the city of Montgomery, nor the legislature, has the power to eliminate from the deed of conveyance, the provision which declares, that if the land is used for other purposes "it is to revert to me or my heirs." To hold otherwise, would invade the sanctity of contract, and destroy rights reserved by solemn deed. Persons erecting improvements or making investments with reference to Gilmer Park, and having notice, actual or constructive, of the terms and conditions upon which the city acquired the land, have no cause of complaint against the grantor or his heirs. He had the right in making the sale to contract for the conditions upon which the land should revert, and the city acquired and held the land upon these terms and conditions, and no other. The case is differ-

ent where there has been an irrevocable dedication, or where the municipality purchases land and obtains an absolute, unconditional, indefeasible estate in fee. According to the averments of the bill, the city of Montgomery has abandoned the land as a park, or street, and so far as it is competent to act, has devoted the land to other purposes than "as a street or common;" but complainant's contention is, and the equity of the bill rests upon the contention, that any act of the city of Montgomery, by which the land might revert to the grantor as provided in the deed, is null and void. The equity of the bill, summarily stated, is that the provision in the deed of conveyance of Gilmer to the city, "said lands to be used only as a common or street, otherwise to revert to me or my heirs," is without legal force and ought to be stricken out. Certainly the parties to the deed did not so understand it; and we know of no rule of equity or justice which sustains the contention. It may be, that by some act of Gilmer he is estopped from asserting any claim or right reserved or provided for by virtue of the deed, and the bill may be capable of amendment so as to give it equity in this respect. We are unable to say.

The bill shows clearly, that the other citizens of Montgomery will suffer like inconveniences and deprivations as himself, by destruction of the park and the running of railroad engines over the land. Conceding that the bill shows, that application to the city authorities for redress would be useless, has a single citizen of Montgomery, in his own name, the right to file a bill to redress what is shown to be a public wrong, if a wrong at all? Should not the bill be filed in the name of all or such as are willing to come in as complainants? To authorize a bill in the name of a single person, must it not aver, not by way of conclusion, a special injury, but the facts which show a special injury different from that sustained in common with others?—2 Dillon Munic. Corp., §920, and note; *Church v. Portland*, 6 L. R. A. 259, and notes. These questions are not raised by demurrer, and are not before us on this appeal. We merely suggest for inquiry.

We will refer briefly to the decree dissolving the injunction. On page 38 of the record it is said: "This cause coming on to be heard on motion to dissolve the

injunction, on the sworn denials of the answer, and to dismiss the bill for want of equity." We regard this as a submission upon the answers of all the defendants. Many exceptions are taken to answers, which were not considered by the court. Leaving out of consideration all the averments of facts except those responsive, and such as should be considered on a motion to dissolve the injunction, under our view of the law, we are of the opinion the injunction was properly dissolved.