(114 So. 63)

FT. PAYNE CO. v. CITY OF FT. PAYNE.
(7 Div. 754.)

Supreme Court of Alabama. June 30, 1927.

Rehearing Denied Oct. 27, 1927.

1. Dedication ⬪1—To constitute "dedication" of park, there must coexist dedicator's intent to donate and acceptance by public.

To constitute "dedication" of park to city, there must coexist animus dedicandi on part of dedicator and acceptance by public.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dedication.]

2. Dedication ⬪38—Accepted dedication of park by public is irrevocable.

When park having been offered to public is accepted, dedication becomes irrevocable.

3. Injunction ⬪230(2)—In city's bill to restrain trespass on land claimed as public park, defense that mortgagee was innocent purchaser cannot be considered if not pleaded.

In suit by city to enjoin trespass on land inconsistent with its use as public park, suggestion that mortgagee was innocent purchaser cannot be considered where such defense was not set up in pleading and complainant not informed that such issue of fact was relied on.

4. Evidence ⬪158(16), 181—Assessment on proper records of municipality is legal proof of taxation to refute city's claim that land is public park; predicate must be laid for secondary proof such as receipt for taxes to refute claim that land was public park.

In showing payment of taxes to refute city's claim that land was public park, legal proof was assessment on proper records of municipality, and predicate must be laid for secondary proof such as receipt for taxes.

5. Estoppel ⬪62(4)—Tax receipt to defendant will not estop city from asserting rights to land as public park after dedication by way of common law.

Where dedication of park to public was by way of common law, defendant's receipt for taxes is not sufficient to raise estoppel against city suing for benefit of people having right of use of park.

6. Dedication ⬪53—Dedication to municipality by way of common law leaves fee in dedicator, public having easement.

Where dedication of park to city was by way of common law, fee and rights not inconsistent therewith remained in dedicator, public having easement.

7. Dedication ⬪44—Evidence held to show that use by public of park was acceptance of recognized and intentional dedication of public park.

Evidence *held* to show that use and resorting by public to certain park was that of acceptance of recognized and intentional dedication of public park and not that of resorting of people to private or hotel grounds as private park.

**8. Dedication ⬛⟶41—Park is presumed to be public after many years of use by public in acceptance of recognized and intentional dedication.**

After use by public of park in acceptance of recognized and intentional dedication continuing for many years, there is presumption of law that park was public one.

**9. Municipal corporations ⬛⟶277—City may own park outside corporate limits (Code 1923, § 2046).**

City may own real estate, including park, outside corporate limits, in view of Code 1923, § 2046.

**10. Municipal corporations ⬛⟶276—Cave as pleasure resort is not ordinary and necessary incident of municipal life.**

Cave as pleasure resort, in nature, is not ordinary and necessary incident of municipal life.

Appeal from Circuit Court, De Kalb County; W. W. Haralson, Judge.

Bill for injunction by the City of Ft. Payne against the Ft. Payne Company, and a cross-bill by the respondent. From the decree respondent appeals, and complainant cross-assigns error. Affirmed.

H. T. Bailey, of Ft. Payne, and W. T. Murphree, of Gadsden, for appellant.

To support the bill, complainant must have peaceable possession, and not merely a scrambling or disputed possession. Donohoo v. Smith, 207 Ala. 296, 92 So. 455; Steele v. Sullivan, 70 Ala. 589. To effect a dedication of property to public use, there must be an intention on the part of the owner to so devote his property, and an acceptance by the public, or some one for it. The user of the property by the public must be of such character as to exclude the private rights of the owner; he must be shown to have abandoned his property. The burden of proof is on the party alleging dedication. Moragne v. Gadsden, 170 Ala. 124, 54 So. 518; Attorney General v. Lakeview Land Co., 143 Ala. 291, 39 So. 303. To discharge this burden of proof, the evidence must be clear and cogent, convincing of an intention to dedicate. Florence v. Florence Land Co., 204 Ala. 175, 85 So. 516. In order to establish dedication by making a plat, it is necessary that the person platting the property was the owner. Johnson v. Common Council, 127 Ala. 244, 28 So. 700. There is no statutory dedication, without recordation of the plat showing the park as such. 18 C. J. 68.

Chas. J. Scott, E. M. Baker, and I. M. Presley, all of Ft. Payne, for appellee.

Dedication of parks is established in the same way as other dedications; may be made orally, and a single clear, unequivalent declaration by the owner may be sufficient for this purpose. 18 C. J. 48, 56; Trammell v. Brad-

ford, 198 Ala. 513, 73 So. 894; Forney v. Calhoun County, 84 Ala. 215, 4 So. 153; Hill v. Houk, 155 Ala. 448, 46 So. 562. While an intent is necessary to a dedication, the intent is not such as is hidden in the mind of the owner, but an intention manifested by his acts. 18 C. J. 53; E. Birmingham R. Co. v. Birmingham Mach. Co., 160 Ala. 46, 49 So. 448. The use of the word "park," on a map from which sales are made, carries with it the idea of an open or unclosed tract, for the comfort and enjoyment of the inhabitants of the town or city in which it is located. 18 C. J. 63; Manning v. House, 211 Ala. 570, 100 So. 772. It is not essential that the plat should be made by the owner; it is sufficient that he recognize and approve the plat made by another, making sales with reference thereto. 18 C. J. 60; Sherer v. Jasper, 93 Ala. 530, 9 So. 584. Acts of fencing, and leaving in such way as to invite the public to use, is an evidence of intent. 18 C. J. 98. The unauthorized collection of taxes does not estop the city. 21 C. J. 1199; Murray v. Barnes, 146 Ala. 688, 40 So. 348;[1] Demopolis v. Webb, 87 Ala. 659, 6 So. 408.

THOMAS, J. The purpose of the bill was to enjoin the trespass on tracts of land in a way inconsistent with the use of said property as public parks of the city of Ft. Payne. The decree held that the tracts indicated as Union and Spring Grove Parks had been duly dedicated and accepted by the city as parks and enjoined defendant from trespassing thereon, and denied relief to the city as to Manitou Cave Park. The appeal was by respondents. There was cross-assignment of errors by the city of Ft. Payne as to the denial of relief protecting its right and 'use as a park to the tract called Manitou Cave Park. Section 6091, Code 1923; Yates Mach. Co. v. Taylor, 215 Ala. 311, 110 So. 396; Hillman v. City of Anniston, ante, p. 661, 114 So. 55.

[1, 2] The law of dedication, statutory and common law, acceptance and abandonment of public parks and public thoroughfares in cities and towns of the state is well understood and need not be repeated at this time. Avondale Land Co. v. Town of Avondale, 111 Ala. 523, 21 So. 318; Douglass v. City Council of Montgomery, 118 Ala. 599, 24 So. 745, 43 L. R. A. 376; City of Mobile v. Chapman, 202 Ala. 194, 79 So. 566; City of Birmingham v. Graham, 202 Ala. 202, 79 So. 574; Stollenwerck v. Greil, 205 Ala. 217, 87 So. 338. It may be observed that to constitute a dedication there must coexist the animus dedicandi on the part of dedicator and acceptance by the public. Attorney General v. Lakeview Land Co., 143 Ala. 291, 39 So. 303. And when accepted the dedication becomes irrevocable. Forney v. Calhoun County, 84 Ala. 215, 4 So. 153.

The property holdings of the Ft. Payne

Land & Improvement Company in the year 1889 were taken over by the Ft. Payne Coal & Iron Company, and the building or development of the city of Ft. Payne was begun. The latter company made changes in the original recorded map of the former company which lay largely on one side of the A. G. S. R. Company's main line. Material changes made in said map or plot consisted, among other things, the extending of Vine street across two blocks shown on the former map as lots, the extending of streets across block 13, where the original block shows none; alleys were extended through blocks 85 and 86, where there is no appearance of them in the original map. Conveyances in the chain of title, under which defendant claims, refer to the alleys in the two blocks. Block 83 was set apart as a park, trees planted therein (in 1889), and driveways extending north and south and east and west; a fence constructed around this block with gates at the north and south driveways between said trees, and two rows leading east and west with driveway between; fence constructed with gates, and at the center of the block two ornamental pillars were erected of permanent material, with a flight of steps between and leading from Gault avenue into that park and opposite the east and west road or space between the row of trees or driveway.

The Ft. Payne Coal & Iron Company platted adjacent lands to those shown on the original map of its predecessor, the Development or Improvement Company, that contained Manitou Cave addition, and on the other side of the railroad are Spring Grove and Manitou Cave Parks. The Coal & Iron Company had for its use a large map of that city displayed upon its wall in a substantial oak frame. This map is an exhibit and before us. It shows there were changes and additions to the city, which are substantial and patent on inspection. The proof is clear that this map from 1889 was in the office of the Ft. Payne Coal & Iron Company, and that continuously it was referred to and used in the conduct of its business of sales of lots; that said map was displayed in the office of the succeeding companies and so used in locating lots, indicating to purchasers, and to aid in writing descriptions of property sold. The evidence further shows that the large map had other additions to the city not platted by the Ft. Payne Coal & Iron Company, and that said company owned lots in several of such subdivisions.

At the general auction or initial land sale held by the company in May, 1889 (according to the evidence of Quin and Haralson), the general manager of the owner (C. O. Godfrey) repeatedly and publicly announced that Union Park had been given to the city as a public park. In 1890 the Coal & Iron Company published and circulated an advertisement or booklet entitled "Ft. Payne Illustrated," picturing Union Park, containing the statement that parks and driveways had been carefully laid out. This booklet is before the court and shows the parks of the same general character as those indicated on the map described above. The evidence shows that said company did not lay out or dedicate other parks than those embraced in this litigation, and as they were located or indicated on said map.

According to the weight of the evidence, the main entrance to Union Park has not been closed to the general public for all these years, and has been used from time to time as a place of public resort until a short while before this suit, when the attempt was made by respondent to interfere with its free use by the public. The city sought by letter and resolution to remove the difficulty without avail, and the effort eventuated in this suit.

When the Ft. Payne Coal & Iron Company executed its mortgage to the Old Colony Trust Company the description of all of its holdings employed was in accord with the natural extent and subdivisions of the large map exhibited, though the recital is made that it was in accordance with the Christensen survey. The company's holdings were more extended than those contained in the first recited map and extended to large territory or addition beyond the A. G. S. R. R. Company's main line. The large map of 1889, by Louis T. Alden, appears to be, or was, in general accord with the Christensen survey, so far as it went with the material changes we have indicated. However, the defendant and its predecessors in title constantly used the large map in its office, exhibited lots therefrom to purchasers or those desiring to purchase therefrom. Many of the conveyances make no specific references to any particular survey by name, employing a description by lots, blocks, etc. However, a significant fact is that the Fort Payne Company conveyed to Davis & Son a lot or lands, by reference to the Alden map, employed as streets appearing on the Alden map and not in recorded plat or Christensen map. This fact is corroborative of complainant's position as to Union Park.

[3] The bill and pleading to which the decree adverts, and on which it rests under the evidence, left no doubt as to the meaning of the decree as affecting the rights of the respective parties and that of the general public under a common-law dedication and acceptance of the parks in question. And the suggestion that the Old Colony Trust Company was an innocent purchaser is not for consideration by reason of the failure to set up this defense in the pleading and thus inform the complainant of such issue of fact, if it was relied upon. Such is the requirement of equity pleading. Heflin v. Heflin, 208 Ala. 69, 93 So. 719; American Book Co. v. State of Alabama, ante, p. 367, 113 So. 592.

If there was a common-law dedication of that park, it was effective and accepted be-

fore the execution of the Old Colony Trust mortgage. This is referable to the acts and doings of the Coal & Iron Company by erecting the fence, planting trees, erecting ornamental gates, and constructing adjacent public streets leading therein—in short, by the establishment of the park as a part of its land sales and general plan and layout of the city. The intervening parties in interest from the Ft. Payne Coal & Iron Company to the Ft. Payne Company were holding companies. And when the property as a whole changed hands the descriptions in the conveyances were consistent with and conformable to the large map in evidence. In each, Spring Grove Park, conceded to the city, is described and conveyed in the same manner and way as was described and conveyed Union Park. These conveyances in dealing with blocks 85 and 86 show an alley, and some of these conveyances describe a part of the block as "lying between the alley" and the "A. G. S. Railroad." The assessment for taxes employs the same description of the last tract.

At the risk of repetition, we may note that the Ft. Payne Company bought the property, and made, acquiesced in, or recognized the dedication of Union Park and Spring Grove Park. The large map before us in a permanent oak frame was retained in that company's office; it indicates these parks and was the only or exhibited map. That is to say, this map followed the company's office when it moved from one point to another—was used to indicate its properties to parties seeking or considering a purchase. In response to this it is insisted that, though such use was made of the large map, it was explained that another plat was the true map. The weight of the evidence is against this, and favors the general and more extended use of the large or wall map by each of the owning companies. This is the effect of the testimony of Quin, Campbell, Cox, Killian, Guest, Baker, and Slope, who assert that the exclusive officer of the owner (Cochrane) did not so limit or explain to them as purchasers the use of the large map; though the deeds do not make reference to any particular survey or map, they employ the descriptions by lots or blocks as appear and were indicated or pointed out on the wall map.

Adverting to the deed from the Ft. Payne Company to Davis & Son and its recital that it was according to S. F. Alden survey, it should be said that there was but one survey by Alden. The fact that his initials are described as "S. F." rather than "L. (Louis) T." Alden is immaterial and shown by the correspondence of description employed with that of the wall map in evidence, and with the blueprints therefrom. That description in said deed was in accord with the conveyance from the Ft. Payne Company by Wm. Schall, Jr. The expression in the conveyances or tax list, "and strip from alley to R" —A. G. S. R. Co., as to adjacent or contiguous blocks 85 and 86, could only have application and be in accord with the one map or survey by Alden. It is consistent thereto and contradictory of the recorded or L. N. Christensen plat or map. The later reformation of that conveyance did not affect other parties than those before the court in said suit, and not the general public of the city of Ft. Payne.

The fact that taxes were paid from time to time does not change the result. As to block 83 or Union Park the assessment and payment was intermittent. For a part of the time the tract was indicated as "Park block" and no assessments thereof. When the E. N. Cullom tax record before us is carefully considered, it does not sufficiently or specifically disclose that the respondent paid taxes on Union Park blocks, and the Alden map is referred to in the description "strip east of alley to R. R." of blocks 85 and 86.

The use of the big map, showing the parks, the use of these parks by the public, the failure of the Ft. Payne Company to pay tax, the marking of block 83 as "Park block," corroborates the other evidence of dedication or acquiescence in the dedication of Union Park by the respondent.

[4-6] The insistence of sidewalk improvement and payment therefor by the last holding company, Ft. Payne Company, of $215 in 1914, was set up by its cross-bill. The city denied that the Ft. Payne Company was the owner of the park and denies that said municipality ever levied such assessment; avers that the sidewalk was constructed or improved and that said payment on the part of the Ft. Payne Company was a voluntary contribution thereto. The proof in the premises offered by the Ft. Payne Company was its receipt for taxes; no assessment by the city against it as owner of block 83 or Union Park was shown. The legal proof was an assessment on the proper records of a municipality. And no predicate was laid for secondary proof. However, the receipt is not sufficient to raise or found thereon an estoppel against the city suing for the benefit of its people having the right of the use of the park. Webb v. City of Demopolis, 95 Ala. 116, 13 So. 289, 21 L. R. A. 62; American Book Co. v. State of Alabama (Ala. Sup.) 113 So. 592.[1] If the respondent had always paid taxes on this park, in view of all the evidence, it would not estop the city from asserting the rights of a public park. Murray v. Barnes, 146 Ala. 688, 40 So. 348.[2] Since the dedication was by way of the common law, the fee and rights not inconsistent therewith remained in the dedicator. The public had

[1] Ante, p. 367.

[2] Reported in full in the Southern Reporter; not reported in full in Alabama Reports.

the easement, enjoyed it from about 1889 or 1900 to the recent suit or controversy. And if taxes had been continuously paid, it may be referred to the fact of and as holder of the fee subjected to the easement. That the septic tank was formerly located in Union Park is not sufficient to rebut the evidence of its dedication and acceptance when considered with all the evidence, and for respondent to establish further fact that the plat or block was held as hotel grounds and as its private park. It was not so designated on the large map; it was not pointed out as a private park to investors, and was not conveyed as a part of the hotel property when the latter was conveyed.

Mr. Wolfes, its purchaser, said he took the names of the streets in describing block 57 (hotel block) from the recorded map or that in witness' office, yet, he used the name of Park street as a line of said block and that street only appears on the Alden map, the wall map before us. The recorded or Christensen map uses the name of Linn street to designate the same thoroughfare called Park street, and employed in the deed of grantor to Wolfes.

In addition to this, we again observe that Union Park was open at all times to, and used by, the public, by way of Gault avenue entrance. Through Cochrane said permission was always obtained for special public gatherings; he did not give the names of those who had made specific requests to him for that use. Had he been able to do so, the opportunity would have been afforded the city for rebuttal.

[7, 8] The voluminous record has been examined, and we are impressed that the use and resorting by the public to this park was that of an acceptance of a recognized and intentional dedication of a public park, and not that of a resorting of the people to the private or hotel grounds as its private park. After the long and intervening years the presumption of the law under the circumstances disclosed by the record is that the park was a public one. Moragne v. Gadsden, 170 Ala. 124, 54 So. 518; Rudolph v. City of Elyton, 161 Ala. 525, 50 So. 80; Trammell v. Bradford, 198 Ala. 513, 73 So. 894; Lynne v. Ralph, 201 Ala. 535, 78 So. 889; Moon v. Lollar, 203 Ala. 672, 85 So. 6; City of Florence v. Florence Land & Lumber Co., 204 Ala. 175, 85 So. 516; Locklin v. Tucker, 208 Ala. 155, 93 So. 896.

[9] The fact that the Manitou Cave Park may have been without the surveys of the corporate limits would not affect its dedication to the city. We may observe of this that the codification of the general law was that given a place as section 2046 of the Code of 1923.

Of the powers of municipal corporations, we are of opinion that the weight of authority is to the effect that cities may own real estate, including a park outside its corporate limits. The question of improving such a park and expending the city's money therefor has presented a divergence of authorities. This subject is stated by McQuillin on his standard work on Municipal Corporations, volume 3, § 1108. He has this to say:

"Notwithstanding earlier rulings to the contrary including dicta, probably influenced to some extent by an eminent authority on municipal corporations, it is believed that the rule supported by the weight of authority as well as by the better reasoning, is that a municipal corporation, where not expressly prohibited, may purchase real estate outside its corporate limits for legitimate municipal purposes, especially under such a broad charter provision as one conferring power to purchase and hold real estate sufficient 'for the public use, convenience or necessities.'

"Here it is necessary to have in mind the distinction between the right to acquire and own property outside the limits, and the power to exercise rights of sovereignty over such property. Hence it is clear that cases holding that a municipal corporation is not liable in damages for injuries caused by the condition of or in connection with extraterritorial property cannot be said to be authorities in favor of the proposition that it cannot purchase or otherwise acquire and hold property outside the limits. Accordingly it has been held that a city has general power to purchase land outside the limits for a public park, or a stone quarry to furnish crushed rock for use upon the city's streets, or a gravel bed.

"At present there can be no question that a municipal corporation may purchase and hold land outside its limits for certain necessary purposes such as a cemetery or a pesthouse or a water supply or the like."

In volume 8, par. 1824 (McQuillin) we find:

"Authority to make improvements beyond the corporate limits is often implied on the ground of necessity, as sewer outlets, or as it is said it arises by implication. Improvements relating to a municipal purpose without the municipal area are generally sanctioned, as sewers and drains, parks and water supply."

[10] We have not reversed the honored trial court in denying the insistence of the city to Manitou Cave Park. Conceding that a city may own and maintain a cave as a public resort under proper authority or circumstances of fact, yet a cave as a pleasure resort, in nature, is not an ordinary and necessary incident of municipal life. To review the evidence on this ruling is not necessary. The decree of the circuit court, in equity, is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and BROWN, JJ., concur.