McCune *et al.*, Appellants, v. HULL *et al.*, Respondents.

1. Calls for boundaries may be controlled by other words of description in a deed.

### *Appeal from St. Louis Land Court.*

The facts are set forth in the opinion of the court.

*Whittelsey*, for appellants.

I. The deed of the executor of Robert N. Moore did convey the land sued for. The deed is to be construed to refer to facts existing at the date of its execution, and the boundaries re-

ferred to, therefore, would be the boundaries existing at the date of the order and sale, and the survey for Laclede would therefore be the United States survey No. 1584, that being the " land conveyed for Laclede" at that date. (Jones v. Johnston, 18 How. 150–6; Lamb v. Rickets, 11 Ohio, 311; Giraud's Lessee v. Hughes, 1 Gill & Jo. 249.) The plaintiffs are entitled to all the land within the boundaries called for, although its quantity be greater than stated in the deed. (Marshall v. Bompart, 18 Mo. 84; 5 Metc. 15; Jackson v. Defendorf, 1 Caines, 473.) There are three parts to this description, and apparently the different parts do not agree together. 1st. It is to be *three* arpens in front, and is to be bounded southwardly and northwardly by lands *surveyed* for Laclede. The land sued for is bounded south by Laclede, as surveyed by the United States; but there is no land surveyed for Laclede on the north. 2d. But to make it more certain, it was to be the land surveyed for Gagnon, as appears from *Livre Terrien;* but no such survey is found; and the United States survey No. 1591 gives only one and a half arpens front; so we have Gagnon's land, one and one-half by forty arpens, and one by forty arpens on the south, to have the land bounded south by land surveyed by Laclede. 3d. It was to be also the same land conveyed to Philip Fine and wife to the Moores, and the same sold by commissioners to R. N. Moore and others; and it may be admitted that they did not intend, nor suppose themselves, to divide and sell the land sued for, although the calls for boundaries embrace it. If the plaintiffs' construction of the order of sale and deed is right, the only error in the actual description will be the call for the three arpens front. Courses, and especially distances, yield to calls for ascertained and settled boundaries. (Campbell v. Clark, 8 Mo. 553; McKee v. Somers, 15 Mo. 84; Jackson v. Ives, 9 Conn. 661.) The first part of the description being more definite, will pass all within the boundaries of a tract, although the latter description of the land conveyed or sold may not pass it. (Jackson v. Remsen, 18 Johns. 107; 5 Metc. 15; Jackson v. Barringer, 15

Johns. 471.) The line of a tract of land is a call as well as a natural object. (Carroll v. Harwood, 5 Harr. & Johns. 163 ; Pennington v. Bordley, 4 Harr. & Jo. 457.) The land surveyed for Laclede is an actual boundary, as shown in evidence, and that call appeared upon the plats of the United States surveys, to which purchasers would go for reference as to the actual location of the tract sold and its bounds.

*Cline & Jamison*, for respondents.

SCOTT, Judge, delivered the opinion of the court.

Robert N. Moore died in 1849, having devised all his real estate to his wife Mary Ann. In September, 1850, his widow, Mary Ann Moore, intermarried with James M. Lyon. Hugh Garland was the executor of R. N. Moore, and as such procured a sale of real estate belonging to his testator. On the 17th November, 1851, James M. Lyon bid off the real estate thus sold. On the 29th March, 1852, by a deed duly recorded, Lyon, and his wife claiming as devisee, conveyed to Joseph S. Hull, one of the defendants, their interest in the lot in dispute. Lyon being unable to comply with the terms of the sale made by Garland (the executor), conveyed the interest acquired at said sale to the plaintiffs, McCune & Vandeventer, on the 21st September, 1853, and on the same day the executor gave them a deed for the land purchased originally by Lyon. McCune and Vandeventer, the plaintiffs, claim that the deed received by them from the executor of R. N. Moore conveyed the interest to them in the lot which Lyon and his wife had coneyed to Joseph S. Hull, the defendant. This interest is the subject of this controversy.

The lands in controversy consisted of three common field lots belonging to the Grand Prairie, north-west of St. Louis. Two of these lots were one and a half arpens by forty arpens in width, and constituted a tract or parcel of three arpens in front by forty in depth. The other lot was one arpent in front by forty in depth, and constituted another tract or parcel. The two tracts adjoined each other and formed a parallelogram of

four arpens in front by forty in depth.  The whole parallelo-gram was under one enclosure at the time of the executor's sale, and made the homestead of the Moore family—the dwell-ing-house being on the one by forty arpens.  Some of the wit-nesses were of opinion that at the sale the whole four arpens front were sold.  The two tracts composing the entire parallel-ogram had been acquired by the Moore family at different times by distinct purchases from different vendors—the three arpent lot from Philip Fine, and the one arpent lot from the heirs of Benito Vasquez—and by this description it was con-veyed by Lyon and wife to Joseph S. Hull, the defendant.  The deed under which the plaintiffs claim, being the deed of Gar-land, R. N. Moore's executor, contains the following descrip-tion of the land : " A tract or parcel of land situate in the Big Prairie, about three miles north of the town of St. Louis, con-taining three arpens, more or less, in front, by forty, more or less, in depth ; bounded southwardly and northwardly by lands surveyed for one Laclede, being the same tract surveyed for one Philibert Gagnon, otherwise called Laurent, under the name of Laurent, as appears by *Livre Terrien*, No. 2, p. 49, book T, p. 171, being the same land conveyed to Alex. Moore, Nelson Moore, Robt. Moore, Elizabeth Moore and Jas. Moore, by Philip Fine and Sarah his wife, by deed dated April 25, A. D. 1823, and being the same tract deeded in 1837 by M. P. Leduc, Jos. Corbit and Joseph Charless, as commissioners in partition, to Robt. N. Alexander and Elizabeth Moore."  The deed then only calls for a lot three by forty arpens.  The appraisement of the land, made preparatory to the sale, described it as a lot of three by forty arpens, and the appraisement was not in the lump but by the arpent.  In the order of sale the land was described as it was in the plaintiffs' deed.  The deed referred to in the above description as made by the commissioners in partition, Leduc, Corbit and Charless, shows that only one hundred and twenty arpens were divided by them, being the area of the three by forty arpens lot.  The deed from Fine to the Moores, also mentioned in the foregoing description, conveyed a parcel of

land containing three arpens, more or less, in front, by forty arpens, more or less, in the rear.

This seems to us a very plain case when the facts are understood. The plaintiffs have the quantity in the number of arpens they supposed they were purchasing when they took their deed. This does not satisfy them. They insist that the boundaries in their deed entitle them to one hundred and sixty arpens instead of one hundred and twenty, the quantity they supposed they were buying. The plaintiffs claim under a deed which calls for a lot of three by forty arpens, more or less. This lot has three different descriptions in their deed. Two of these descriptions show the lot to be three by forty arpens, thus corresponding with the deed referring to them. The plaintiffs would have us reject these two descriptions corresponding with their deed, and adopt the other one, which would give them a lot variant in its dimensions from that called for by their deed—a lot of four by forty arpens. This too is insisted on, while the boundaries of this last description are not ascertained, but depend on evidence by no means satisfactory. On what principle of interpretation can we reject the two descriptions which answer the call in the deed, and adopt the other which does not correspond with it, and whose boundaries are merely conjectural? After thus fixing the boundaries of this description, by force of the "more or less" they would include another common field lot in their deed. Whoever heard that the words "more or less," when used in a deed describing a common field lot of one of the usual dimensions, should be so construed as to include another common field lot? The words "more or less" used in describing the front of a lot mean no more than they do in describing its depth. They mean that the lot conveyed may be in size more or less than the dimensions given, but not that they may be so extended as to include a separate and distinct lot. The doctrine of quantity yielding to ascertained and fixed boundaries has nothing to do with such a case, even if there were such boundaries. But this is not all. The plaintiffs claim this lot, or an interest in it, although the individual

from whom they claimed had, by a deed recorded, conveyed away the lot before they received their conveyance from him. It is impossible to read the evidence in this case and not come to the conclusion that the plaintiffs not only have no title to the lot in question, but it would be unjust to give them any. They have as much land as they bought, and with what face can they ask that another lot may be added to their quantity? If we throw aside the deeds and go into the extrinsic evidence, the testimony of Charless, the commissioner in partition, who swears that he did not divide the lot in dispute, consequently that it is not included in the plaintiffs' deed, is at least an equipoise for all that in support of the plaintiffs' pretences. But such evidence can not affect this case. It stands upon the deeds in evidence, and they, beyond all doubt, show that the plaintiffs have no claim.

We deem it unnecessary to review the instructions, as from the face of the papers the plaintiffs can not make a case on which they would be entitled to recover. Judge Ryland concurring, the judgment will be affirmed; Judge Leonard absent.