### H. H. REED vs. EDWARD LAMMEL.

### October 1, 1881.

Deed—Description—Reference to Defective Town Plat.—A deed contained no description of the property intended to be conveyed, except by reference to certain designated lots in a plat on file in the office of the register of deeds, which plat lacked the essentials of a statutory town plat. *Held*, (1) That such plat may, notwithstanding its failure to comply with the statute, be treated as a part of the deed, for the purpose of identifying the lands intended to be conveyed.

Same—Uncertainty in Description.—2. That the deed was void for uncertainty, for the reason that the plat referred to furnished no sufficient *data* or information by which the lots referred to could be located on the ground.

Appeal by plaintiff from an order of the district court for McLeod county, *Macdonald*, J., presiding, refusing a new trial.

*M. O. Little*, for appellant.

*A. P. Fitch*, for respondent.

CLARK, J. This is an action of ejectment. The complaint alleges that the plaintiff is, and has been for more than eight years last past, the owner in fee-simple of the south-west quarter of section 13, in township 115, and range 28, situated in McLeod county, Minnesota, and that he is, and has been during all that time, in possession thereof, except as dispossessed by the defendant; and that on the 1st day of June, 1879, the defendant wrongfully entered upon, and has ever since possessed, and now withholds from him, a part of said quarter-section, viz., a tract of land 20 rods square in the south-west corner thereof. The answer puts in issue the ownership and posses-

sion, by the plaintiff, of the entire quarter-section, and alleges that the defendant is the owner, and has been in possession, for two years last past, of a rectangular piece of land in said quarter-section, 146 feet by 8 rods, which is described by metes and bounds, and which is within the alleged tract 20 rods square, but does not touch the section line at any point. The case was tried by the court without a jury, and the court finds that the defendant is the owner and entitled to the possession of lots 9, 10, 11 and 12, in block 49, of Wigfall & Bell's addition to Glencoe, in said county of McLeod, and is not in possession of any other portion of said quarter-section, and orders judgment accordingly. As there would otherwise be a departure in the findings, we will assume that this description was intended to cover the tract of land described by metes and bounds in the answer.

The trial proceeded upon the theory that A. Jackson Bell, the common source of title, was, the owner of the entire quarter-section on the 21st day of March, 1857. The plaintiff, to prove his case, put in evidence the record of a deed from him and his wife of the quarter-section to Mary L. Hill, dated September 26, 1870, and recorded May 6, 1871, and the record of a deed of the same quarter-section from Mary L. Hill to the plaintiff, dated April 27, 1871, and recorded May 7, 1871. The defendant offered in evidence the record of a deed from A. Jackson Bell and wife to Richard Chute, dated August 9, 1859, and recorded August 24, 1859, of lands in McLeod county, Minnesota, described as follows: "Lots 9, 10, 11 and 12, in block 49, in Bell & Wigfall's addition to Glencoe, according to the lithographed map of said addition, now on file in the office of the register of deeds in and for the county of McLeod." There were embraced in the description 59 other lots in different blocks of the same addition. The defendant also offered the record of several other deeds of conveyance, constituting a chain of title from said Chute to the defendant, containing a similar description, and including lots 9, 10, 11 and 12, in block 49. The defendant also offered a plat on which was indorsed a certificate of the register of deeds of McLeod county, of the filing thereof in his office for record on the 22nd day of March, 1857; also a certificate as follows:

"The undersigned, proprietor of the annexed map of Wigfall & Bell's addition to Glencoe, do hereby certify that I caused the same to be mapped and laid out, and I hereby give, for the use of the public forever, all the streets and avenues as described therein.

"Given under my hand the 21st day of March, 1857.

"A. JACKSON BELL,

"ELIZABETH BELL.

"In presence of A. M. Close."

—Annexed to which was a certificate of a notary public of the acknowledgement thereof by A. Jackson Bell and Elizabeth Bell, dated March 21, 1857. There was also indorsed on the plat the following statement, not signed or dated, viz.: "Wigfall & Bell's addition to Glencoe, being the south-west quarter of section 13, township 115, range 28, in which all lots are $36\frac{1}{2}$ feet front, and all east and west streets five rods wide, and all north and south streets four rods wide." A scale was also indicated on the plat, marked "Scale of feet, 300 per inch." The face of the plat was 13 inches square, and it was intersected by streets, running north and south and east and west, and the blocks thereby formed were numbered from 1 to 64, inclusive. The blocks were divided into 16 lots each, 8 of them fronting north and 8 fronting south, except that the tier of blocks on the south line of the plat were half blocks, containing 8 lots each, fronting north, and the east tier of blocks contained 12 lots, 6 fronting north and 6 fronting south. The lots were not numbered, except that the lot at the north-west corner of each block of 16 lots was numbered 1, and the lot immediately south of it, in the south-west corner, was numbered 16. The length of the lots was not stated, nor their width, except in the general statement above set forth. There was no certificate of a surveyor thereon, nor anything to indicate that the lands had ever been surveyed into streets, blocks, or lots on the ground. Block 49 was on the west side of the plat, the west line thereof being on the section line, and had only a street and half block, as above mentioned, south of it. These deeds and plat were admitted in evidence under the objection of the plaintiff to them severally that they were incompetent, irrelevant and immaterial, and the plaintiff excepted.

Upon this state of the proofs, the title of the entire quarter-section is in the plaintiff, unless specific parts of it passed by the deed from A. Jackson Bell and wife to Richard Chute. It is clear that that deed, in and of itself, identifies no particular parts of the quarter-section, because it contains no reference to any monuments whatever, or to any lines located on the ground. It then can have no effect unless the description is aided by the plat therein referred to. And the first question that arises is whether the plat offered in evidence was the one referred to in the deed. The deed refers to "Bell & Wigfall's addition to Glencoe, according to the lithographed map of said addition now on file in the office of the register of deeds in and for the county of McLeod." The plat offered in evidence purported to have been filed in that office prior to the execution of the deed, but it bore the designation of "Wigfall & Bell's addition to Glencoe," and was not a lithographed map. There was no proof in the case that there was not, at the time of the execution of the deed, a plat on file in the register of deeds' office designated as "Wigfall & Bell's addition to Glencoe," and, in the absence of such proof, we are not prepared to hold that any proper inference arises that this was the plat referred to in the deed. But we do not decide the case upon this point.

Assuming, then, that the identity of the plat was established, we have to consider whether it furnishes sufficient *data* by which the lots referred to in the deed can be located. The plat is wanting in nearly all the requirements to make it a statutory town-plat, but a proper reference to it in the deed would, nevertheless, make it so far a part of the deed as to justify its use in identifying the property intended to be passed thereby. But there are no lots in block 49 numbered 9, 10, 11 and 12, and if we should attempt to draw an inference from the numbering of lots 1 and 16, as above mentioned, that it was the intention that the other lots in the block should be regarded as numbered in progressive order, around the block, from 1 to 16, still, as the length of the lots is not stated, the difficulty would not be materially relieved. If we resort to the scale, 300 feet to the inch, to ascertain the length of the lots, we find, the plat being 13 inches square, that its use would make the quarter-section 3,900 feet

square instead of 2,640 feet; and if we resort to the given lines for a new scale, we find that the aggregate width of the lots and streets across the plat from east to west is 2,725 feet; so that a scale based on these lines would make the plat overrun the ground, while a scale based upon a quarter-section line of 2,640 feet would necessitate cutting down the width of the lots or streets, or both. It was in evidence that the quarter-section contained 160 acres. The map does not indicate the place of any monument as a starting point for surveys; nor, indeed, does it show that any survey was ever made in the prosecution of which it could be presumed that the results of the survey were left marked on the ground. The oral testimony offered in behalf of the defendant does not help this condition of things in any respect. Indeed, the surveyor who undertook to locate the lots for the defendant testified that he was not governed by this plat, and he was not able to give any satisfactory reason why he located the lots where he did. He testified to no monuments of any previous survey. Although, treating this plat as the one referred to in the deed for the purposes of the description, it is apparent that the parties intended that the deed should pass the title to a large number of parcels of land in this quarter-section, yet we are unable to find from the deed or plat any clew by which the lands so intended can be defined or located on the ground, and are therefore reluctantly forced to the conclusion that the deeds offered are void for uncertainty in the description, and should have been rejected.

Order reversed, and new trial granted.