# Southern Iron & Steel Co. *v.* Stowers.

## *Ejectment.*

(Decided November 7, 1914.   66 South. 677.)

1. *Deeds; Description; Area.*—Where plaintiff claimed under a deed conveying two 40-acre tracts, except 7 acres thereof, theretofore sold to defendant's predecessor in title, as described in his deed, and defendant claimed under a deed reciting that it was in fulfillment of the contract to convey about 7 acres out of the north side of the two forties, the deed describing the land conveyed as 7 acres more or less, situated in said two forties, lying north and northwest of a certain railroad, and including the right of way, plaintiff was entitled to all the land south of the right of way, although there were only three or four acres in the tract north of the railroad; since quantity cannot control the bounds in a description where the words' "about" and "more or less" are used.

2. *Same; Uncertainty; Validity.*—A deed must be given effect if possible, and is to be construed against the grantor; hence, where a deed, other than a tax deed, conveys an entire tract, except a part, and the description of the part excepted is uncertain, the exception, but not the grant, will fail.

3. *Same; Description.*—Where a deed refers to another deed, the deed to which reference is made is considered as incorporated in the deed containing the reference, for the purpose of interpretation.

4. *Same.*—Where a deed refers to a previous contract in pursuance of which it is given, the deed will be construed in the light of the

contract, but such contracts cannot enlarge the grant, even though the deed stated that it conveyed the same lands described in the contract, and there were elements in the description in the contract which might include more land than was described in the deed; the deed determining the construction placed by the parties upon the contract.

5. *Same; Presumption.*—Where a grantor conveys a certain quantity of land in a larger tract, without describing the boundaries thereof, the presumption is in favor of a square or parallelogram, not a fanciful or unique figure.

6. *Ejectment; Burden of Proof; Exception.*—Since a plaintiff must recover on the strength of his own title, and not on the weakness of that of his adversary, plaintiff must prove the extent of the exception, where he had purchased an entire tract, except a part previously conveyed to another.

7. *Same; Tacking; Outstanding Title.*—One who entered upon land under a deed which did not give him even color of title thereto, is a mere trespasser, and cannot show an outstanding title in his grantor by adverse possession to defeat ejectment.

8. *Adverse Possession; Continuity; Color.*—Where a plaintiff took possession of the land in controversy as soon as he received his deed conveying title thereto, a defendant, who received the deed under which he claimed the premises thereafter, and ousted plaintiff, cannot rely upon the adverse possession of his predecessor in title, where his deed was not color of title to the land in controversy.

9. *Same.*—To constitute color of title enabling a grantee to rely upon the adverse possession of his grantor, the description therein must be sufficiently certain to enable a surveyor on search or inquiry as to the attendant circumstances to locate the land without reliance upon the claims of the grantee, even though such claims be honestly made.

APPEAL from Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

Ejectment by W. F. Stowers against the Southern Iron & Steel Company. Judgment for plaintiff and defendant appeals. Affirmed.

HOOD & MURPHREE, for appellant.

GOODHUE & BRINDLEY, for appellee.

SAYRE, J.—Plaintiff (appellee) sued the Southern Iron & Steel Company in an action of ejectment to recover all that part of the S. W. ¼ of N. E. ¼ and the S. E. ¼ of N. E. ¼ of section 8, township 11, range 6 east, that lay south and east of a certain railroad track running through the northeast corner of the first-named and through the northwest corner of the last-named 40-acre tracts. It may be here stated, as an undisputed fact, that the railroad track in the complaint mentioned, and which the Etowah Mining Company had formerly owned and operated in connection with its mines in the vicinity, passed from the northeast into the S. E. ¼ of N. E. ¼ of section 8, crossed the line between the two 40's and curving around toward the northwest, crossed the north line of the S. W. ¼ of N. E. ¼ of said section, thus marking off an area of some three or four acres lying within the curve and

partly in each of the two 40's. Defendant's disclaimer reduced the land in controversy to a tract of very irregular shape lying south of the railroad and its right of way, conceded to extend 20 feet to the south of the track, and reaching across the northern part of the S. W. ¼ of N. E. ¼ and into the S. E. ¼ of N. E. ¼, and containing exactly seven acres less the area to the north of the railroad. Defendant determined for itself this line between its property and the land of plaintiff further to the south in this way: In 1889 G. W. Nixon and his brother W. N. Nixon had acquired the capital stock of the Etowah Mining Company, through whom defendant claimed, as will appear, and about that time one Hays, who had been president of the old corporation, pointed out this line to the witness G. W. Nixon. Later, and, as it appears, about the time defendant got its deed, Nixon pointed out the line to the engineer Burk, who then, as the latter testified, made the map offered in the evidence by defendant. The witness Burk further testified that he ran his survey of the line according to the deed from Ramey to Nixon, that he started at the northwest corner of S. E. ¼ of N. E. ¼ of section 8 and followed the line of Ramey's original ownership toward the southeast to the public road, thus crossing the railroad which lay about midway between these two points. He went to the public road because, as he says, the road was a part of the deed. But in fact the railroad, and not the public road, was a part of the deed, as will be shown when we come to a statement of the paper title to this property. Thence, it is clearly shown, he followed Nixon's directions back to the neighborhood of the railroad, and thence around south of the road generally, but laying his course in straight lines from point to point, until he reached the last line, the point of

departure, the length and direction of which he determined so as to make it fill two conditions, viz.: The tract should extend entirely across the north of the S. W. ¼ of N. E. ¼ of section 8 and should contain precisely seven acres. But the deed contained neither of these calls precisely. After hearing the evidence, the court gave the general affirmative charge for plaintiff, and the giving of this charge and some other rulings noted in the bill of exceptions raise the questions to be decided on this appeal.

Both parties traced title to one T. J. Ramey as a common source. The land in controversy and that to the north of the railroad, prior to 1888, were parts of a farm owned by Ramey known as the John I. Tucker place, and until January 25, 1910, Ramey owned the land to the south. The paper titles under which the parties claim respectively are to be stated as follows:

Plaintiff: Deed from Ramey, of date January 25, 1910, conveying to plaintiff the John I. Tucker place, which is otherwise described according to the government survey, "but this deed was not meant to include seven acres of land heretofore sold to Geo. W. Nixon by deed which is of record in probate judge's office in Deed Record Book PP, page 607." An agreement of date October 13, 1888, by which Ramey, in consideration of $175 presently paid, the same being one half of the purchase price, assumed and undertook upon the payment of the other half on January 15, 1889, to convey with full warranty to the Etowah Mining Company land described as follows: "About seven acres out of the north side of the south half of the northeast quarter of section eight, township eleven, range six east."

Said agreement also witnesssed that the said Ramey was "to have access to water privileges of water at

the spring which runs on said land, and that the said Ramey agrees to give said Etowah Mining Company a wagon roadway from the main county road or valley road along the south side of the branch railroad running to said mining company's storehouse." Deed, of date July 21, 1908, from Ramey to George W. Nixon, conveying: "Seven acres more or less, situated in the northeast corner of the S. W.¼ of the N. E. ¼ and in the northwest corner of the S. E. ¼ of the N. E. ¼, all in section 8, township 11, range 6, Etowah county, Ala. This is the land sold by grantor to Etowah Mining Company, under bond for title or contract in 1888, and deed to said land was never made by grantor, hence this instrument. Said land conveyed lies north and northwest of the railroad leading up to the old Etowah Mines, and includes right of way as road is now located."

This deed was recorded on the day after its date in Book PP at page 607. These two instruments last named were offered, we take it, to identify the land in controversy as not included within the exception contained in the deed of January 25, 1910.

Defendant: The agreement of October 13, 1888, supra, between Ramey and the Etowah Mining Company. Deed, date July 29, 1893, from Etowah Mining Company to W. N. Nixon in trust for the benefit of the creditors of the company, conveying all its property including: "About seven acres of land in the northeast corner of the southwest of the northeast quarter of section 8, township 11, range 6, conveyed to said Etowah Mining Company on ———, 1889, by T. J. Ramey, which conveyance is recorded in the office of the judge of probate at Gadsden, to which reference is here made for more full description."

As matter of fact, no such conveyance as that to which the deed of trust refers had been made, and, of course, no such conveyance had been recorded. Deed of July 21, 1908, supra, from Ramey to Nixon. Deed, dated February 23, 1910, from George W. Nixon to Crudup Iron Ore Company, conveying: "Seven acres more or less, situated in the northeast corner of the S. W. ¼ of the N. E. ¼ and in the northwest corner of the S. E. ¼ of the N. E. ¼, all in section 8, township 11, range 6 east, in Etowah county, Ala. This is the land sold by Thomas J. Ramey to Etowah Mining Company under bond for title or contract in 1888 and deed to said land was never made by said Ramey. Said land conveyed lies north and northwest of the railroad up to the old Etowah Mines and includes right of way as road is now located."

Quitclaim, of date April 1, 1910, from Nixon, individually and as trustee for the Etowah Mining Company, to Crudup Iron Ore Company, reciting previous conveyances by grantor of the same lands to John H. Marbury on October 11, 1899, and by Marbury to Kindrick on July 3, 1907, and by Kindrick to Crudup Iron Ore Company on August 19, 1907, of lands including a parcel described as in grantor's deed of July 21, 1908, supra. Deed from Crudup Iron Ore Company to defendant executed on July 1, 1910, and conveying, along with other properties, a parcel of "seven acres" of land described substantially as in the deed of February 23, 1910, supra, from Nixon to the Crudup Company.

On the stated muniments, read in connection with the location of the railroad and some other relevant facts to be mentioned, it appears that the title to the land in controversy is with plaintiff. Where a deed of bargain and sale on valuable consideration describes

an entire tract of land, as in Ramey's deed to plaintiff, excepting a part, and the description of the part is vague and uncertain, the uncertainty affects the exception only, and that, not the grant, will fail. This results from two principles: That a deed delivered must have effect, if possible; and the bias of presumptive construction is inclined against the grantor who assumses to speak.—*Frank v. Myers*, 97 Ala. 437, 11 South. 832; *Morris v. Giddens*, 101 Ala. 571, 14 South. 406; *Bromberg v. Smee*, 130 Ala. 601, 30 South. 483; *Dickson v. Van Hoose*, 157 Ala. 459, 47 South. 718, 19 L. R. A. (N. S.) 719. This rule does not apply to tax title deeds where all presumptions favor the proprietor whose property is disposed of to a volunteer by a proceeding in invitum.—*Zundel v. Baldwin*, 114 Ala. 328, 21 South. 420. When the deed under examination refers to another, the deed to which reference is made is considered for the purpose of interpretation as incorporated in the deed containing the reference.—2 Dev. on Deeds (3d Ed.) § 1020, where many cases are cited. Plaintiff had purchased the entire tract, well described in his deed except the part previously conveyed by his grantor to Nixon, and since the plaintiff in ejectment must recover on the strength of his own title, and not the weakness of his adversary's, it was incumbent on plaintiff here to delimit the exception. This he did by introducing the deed to Nixon. The question then is upon the proper construction of the deed to Nixon. This last-named deed would ordinarily be affected by the agreement to which it refers, but in any case the agreement can be merely a help to trace the title, and cannot enlarge the grant.—*Brown v. Heard*, 85 Me. 297, 27 Atl. 182. Construing together the agreement and the deed to Nixon made in pursuance of the agreement, it appears that Ramey in-

tended to convey a tract described in part as "seven acres more or less" or "about seven acres," in the corners of the two adjacent 40's or out of the north side of the 80 made up of the two 40's. If the effect of the agreement and the two subsequent deeds were to be determined upon these descriptions alone, it cannot be supposed that either buyer or seller contemplated a fanciful, capricious, or unique figure.—*Wilkinson v. Roper,* 74 Ala. 140. The presumption in such case would be in favor of a square or parallelogram, a symmetrical figure formed by straight lines.—*Carling v. Wilson,* 177 Ala. 85, 58 South. 417. Thus rule is far from giving countenance to defendant's construction of Ramey's agreement with the Etowah Mining Company and his subsequent deed to Nixon in execution of that agreement. In the agreement there is possibly one indication, in addition to the fact that the area on the inner side of the curve of the railroad track contained only three or four acres, that the parties intended to contract with reference to land south of the track, to wit: Ramey reserved the right of access to a spring which the evidence seems to locate on the south side of the track, but whether the spring was on the right of way is not clear. Per contra, Ramey agreed to give a wagon roadway along the south side of the railroad track, which was not at all necessary if the mining company got the fee to the land over which the roadway passed. Whatever may be the effect of these possible repugnancies in the agreement, the agreement was merged in subsequent deed to Nixon, where the parties or their representatives adopted their own interpretation, and upon it plaintiff may stand. The statement that the land conveyed was the land that had been previously sold under bond for title, in view of the particular description above quoted, did not ren-

der it conclusive that it was the intention of the grantor to convey the whole premises or the total acreage bargained for; even though it was certain that the Etowah Mining Company in the beginning bargained for land south of the railroad; the deed must have effect according to its own terms—*Smith v. Sweat,* 90 Me. 528, 38 Atl. 554; *Lovejoy v. Lovett,* 124 Mass. 270; *McCune v. Hull,* 24 Mo. 570.

"When the land is described by metes and bounds, as constituting a specific tract, * * * the words 'more or less,' or equivalent words, qualify and restrain the respesentation of quantity, and show that the parties did not regard the number of acres stated as an essential ingredient of the contract, but as merely descriptive."—*Hodges v. Denny,* 86 Ala. 226, 5 South. 492; *Frederick v. Youngblood,* 19 Ala. 680, 54 Am. Dec. 209.

"Neither weight nor effect is ever given to a description in terms of quantity, except for the purpose of relieving some otherwise irremedial ambiguity in the more particular description," and in any case this specification must yield to the boundaries actually named. —*Busbee v. Thomas,* 175 Ala. 423, 57 South. 587; 3 Wash. Real Prop. (6th Ed.) § 2322; 2 Dev. Deeds, § 1045.

In the deed before us there is a very clear and definite statement that the land conveyed lies north and northwest of the railroad leading up to the old Etowah Mines, and includes right of way as road is now located. Hence our opinion that the exception was accurately defined by plaintiff's proof, and that, so far as the muniments go, title to the land in controversy was in Ramey at the time of his deed and by that deed passed into plaintiff.

But defendant sought to prove an adverse posses-
sion by the Etowah Mining Company and by Nixon,
and adduced evidence of acts of ownership by them
prior to the date of the deed under which plaintiff
claimed.  Considering the respective paper titles of the
parties to be operative as we have pointed out, this
amounted to an effort to prove an outstanding title.
On that construction of those titles, defendant showed
no connection whatever with the Etowah Mining Com-
pany or with W. M. Nixon, trustee, so far as the land
south of the railroad and its right of way is concerned.
The undisputed evidence showed that, shortly after
plaintiff got his deed, he went into possession of the
Tucker place, including the land in controversy, in-
closing the same with a fence.  This possession of plain-
tiff was alone better evidence of title than any shown
by defendant.—*L. & N. R. R. Co. v. Philyaw*, 88 Ala.
264, 6 South. 837.  A few months later, and forthwith
after defendant company got its deed, it tore away and
destroyed the fence plaintiff had erected along the line
south of the railroad and entered into the possession
it sought to defend in the court below.  This entry
was without claim or color of title other than its deed
from the Crudup Iron Ore Company and the paper
chain by which it traced title back to the common
source.  That paper chain, as we have found, did not
divest title to the land in issue out of plaintiff's gran-
tor, nor was it color of title to that land.  It is well
settled that an instrument, to constitute color of title,
must describe the land; so that, if it is void for uncer-
tainty of description, it will avail nothing as color.—
*Brannan v. Henry*, 142 Ala. 698, 39 South. 92, 110
Am. St. Rep. 55; 3 Washb. Real Prop. § 1981.  This
is not to say that the description of land in a deed or
other instrument purporting to convey title must be

definite and certain altogether in order to suffice as color of title, for if the description is uncertain, but is yet such as to enable a surveyor in search, on inquiry as to attendant facts and circumstances, this is a full answer to the charge of ambiguity or uncertainty.—*Black v. Pratt Coal & Coke Co.*, 85 Ala. 504, 5 South. 89; *Dorlan v. Westervitch*, 140 Ala. 293, 37 South. 382, 103 Am. St. Rep. 35. But it will not be contended that a surveyor may establish the limits of a grant on a plainly erroneous construction, nor, what would come to the same thing, on information received from the grantee as to what the grant includes, as did defendant's surveyor in this case. Nor was it of any consequence in this connection that defendant may have honestly believed or that the grantor supposed, their deeds covered the land claimed by plaintiff. All the laws of conveyance would be set at naught and every title rendered uncertain by a rule that would allow the substitution of belief, often controlled by the bias of interest, for what a deed shows upon its face.— *Williamson v. Tison,* 99 Ga. 791, 26 S. E. 766. As we have already in effect concluded, the color of the deeds under which defendant and its predecessors in title held did not extend below the railroad. On the facts stated, and they are without contradiction, defendant was a mere trespasser upon the land in controversy, and hence not in a position to show a title outstanding in a third person in order to defeat plaintiff's recovery.—*Dodge v. Irvington. Land Co.*, 158 Ala. 91 48 South. 383, 22 L. R. A. (N. S.) 1100.

On the considerations stated, without looking further into others that have been urged and might lead to the same result, we are at the conclusion that the court below properly instructed the jury to find for

[Bedsole, et al. v. Davis.]

plaintiff, and that there is no reversible error in the record. .

Affirmed.

ANDERSON, C. J., and McCLELLAN and DE GRAFFEN-RIED, JJ. concur.