(79 South. 566)

## CITY OF MOBILE et al. v. CHAPMAN.
### (1 Div. 985.)

(Supreme Court of Alabama. Jan. 24, 1918. Rehearing Denied April 25, 1918.)

**1. EMINENT DOMAIN ⬤≈295 — REMEDY OF OWNER—BURDEN OF PROOF.**

In suit to enjoin a city from laying a sanitary sewer along an alleged street, claimed by complainant as her property, complainant has the burden to establish the material allegations of her bill, among them that she is the owner of the tract, and that the maintenance of the sewer would constitute a permanent appropria-

---

⬤≈For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
1 178 Ala. xix, 65 South. vii.

tion of and a continuing trespass on her land, resulting in irreparable injury to her.

2. EQUITY ☞325 — PLEADING AND PROOF — NEGATIVE AVERMENTS.

Generally speaking, negative averments need not be proved as pleaded, but where the right to relief is grounded on such averments, the pleader must establish their truth by evidence, unless the subject-matter of the averments lies peculiarly within the knowledge of the other party.

3. BOUNDARIES ☞2—"SQUARES"—"BLOCKS."

The term "squares" is generally used synonymously with "blocks" in describing urban premises, a square or block meaning a subdivision of a city or town inclosed by streets, whether occupied by buildings or inclosures or merely comprising vacant lots.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Block; Square.]

4. DEDICATION ☞19(4)—HIGHWAYS—MAPS— DECREE IN PARTITION.

Where the decree in a partition suit, referring to a recorded map, allotted certain squares or blocks to certain parties, the reference to the map, which showed streets and alleys between such squares or blocks, constituted a dedication of the streets to the public, and made them exceptions to the several allotments.

5. DEDICATION ☞41 — MAP IN PARTITION SUIT—BURDEN OF PROOF.

In order to establish ownership to a street adjacent to one of the squares shown on a map to which decree in partition referred, the burden rests on claimant to delimit the exception of such street, presumptively dedicated to the public, from the land allotted.

6. DEEDS ☞40—INTERPRETATION OF CONVEYANCE—MAP REFERRED TO.

For the purpose of interpreting a conveyance to ascertain the intention of the parties as to the existence, locations, dimensions, and extent of streets, lots, and blocks indicated, a map, referred to in the deed and in decree in partition suit involving the land, became a part of the grantee's title, since where a map is referred to in a grant or deed as indicating what is intended to be conveyed, it is to be regarded as a part of the conveyance, and may be referred to for the purpose of aiding in the identification of the land, showing its form, location, etc., which is also true of a reference to a plat in a description contained in a deed, though the plat so referred to does not conform to statutory requirements as to recordation.

7. ESTOPPEL ☞22(2) — ESTOPPEL IN PAIS — REFERENCE TO MAP IN DEEDS.

Reference in deeds to a recorded map, showing the land platted into squares or blocks and streets and alleys, operated as an estoppel in pais against the parties, who thus recognized the platting and designation of the streets and alleys, and their successors in title.

8. DEDICATION ☞19(5)—HIGHWAYS—REFERENCE TO MAP.

The public, as well as individuals, had a right to rely on the conduct of the owners of land in platting it into squares and blocks divided by streets and alleys, and in conveying it by reference to the recorded map showing such streets and alleys thus dedicated.

9. DEDICATION ☞37 — ACCEPTANCE—REFERENCE TO PLAT.

The sale and purchase of lots with reference to a plat showing the tract divided into squares and blocks separated by streets and alleys was a sufficient dedication and acceptance of the streets as indicated on the plat, even though a portion of one street was in a swamp and incapable of the ordinary uses of a street, its dedication, acceptance, and use so far as possible by the several owners with reference to the plat rendering the dedication irrevocable, though the city did not open the improvement as a street to its full extent otherwise than by the construction of a sewer.

10. EVIDENCE ☞209—AGREED STATEMENT OF FACTS—ADMISSION.

In suit to enjoin a city from laying a sanitary sewer along a tract which the city claimed was a street, and which complainant claimed was her property, the agreed statement of facts *held* not to contain an admission by the city of complainant's absolute ownership of the lands in question.

Appeal from Circuit Court, Mobile County; Thomas H. Smith, Judge.

Suit by Delena L. L. Chapman against the City of Mobile and others. From decree for complainant, defendants appeal. Reversed, and judgment rendered for defendants.

The maps and plans, directed to be reported, follow:

EXHIBIT No 1
CHANCERY COURT RECORDS BOOK "R" PAGE 810

EXHIBIT No 1 Continued.
CHANCERY COURT RECORDS BOOK "R" PAGE 809

EXHIBIT No 1 Continued
CHANCERY COURT RECORDS BOOK "R" PAGE 807

PLAN
OF THE
LOWER DIVISION
OF THE
BERNOUDY TRACT

EXHIBIT No. 2.

Robert H. Smith, of Mobile, for appellants.
Stevens, McCorvey & McLeod, of Mobile, for
appellee.

This cause was submitted and considered
under Rule 46,[1] and the opinion of the court
was delivered by Mr. Justice THOMAS.

Appellee filed her bill to enjoin the city of
Mobile from laying a sanitary sewer along
a certain street or property in that city.
The chancery court decreed that appellee
was entitled to the relief prayed, but, recog-
nizing the city's right of eminent domain, al-
lowed the municipality 30 days within which
to institute condemnation. Const. §§ 23, 235.
Appellants obtained a supersedeas, and
brought this appeal.

The averments of the bill were that:

Appellee is the owner of a "parcel of land
in the city of Mobile described as that part of
the south two-thirds of the south half of the
southern division of the Bernoudy tract lying
east of Old Water street, which parcel of land
is bounded on the south by the south line of
the Bernoudy tract, on the north by a line par-
allel to said south line of the said Bernoudy
tract and 296 feet and 10⅔ inches north there-
of, on the west by Old Water street and on the
east by Mobile river; that your oratrix, by and
through tenants holding under her, has been in
the actual occupancy of the said parcel of land
for approximately ten years, and still maintains
such occupancy; that in addition to such pos-
session she has a good and valid title thereto,

unquestioned and undisputed except in so far
as concerns the claim asserted by the said city
of Mobile. * * * · That no street has ever
been opened or used through the said premises,
but if Virginia street in the city of Mobile were
projected east from Old Water street to the
river, which is a distance of about 1,800 feet, it
would pass through the said premises and in-
clude a strip 50 feet wide extending east and
west entirely through the north side of the said
premises and so close to the north line as to leave
thereof a strip only about 13 inches in width
to the north of the street so projected. * * *
That the city of Mobile has authorized the con-
struction of a large sewer coming east on Vir-
ginia street from the western portion of the
city, and has planned and contemplates the run-
ning of said sewer through the aforesaid prem-
ises of your oratrix along the line of what would
be Virginia street were it projected through
said premises. * * * That the said city of
Mobile claims that the said Virginia street ex-
tends east of the Old Water street and to the
river, and that it, the said city, has the power
and authority to use the space which would be
embraced in said street if it were so extended
and for any purpose for which a public street
may be used by the municipal authorities; that
the said city claims the right to lay the said
sewer through the said premises of your oratrix
and along the line of what would be said street
if projected east from Old Water street to the
river, and, under the force and power which it
can exercise as a governmental body through
its police officers, will take and use the said
premises for said purpose unless restrained
therefrom by an injunction from this honorable
court; that the said sewer will be permanent
in its nature, and such taking and user of a
portion of the said premises of your oratrix will
involve and constitute a permanent appropria-
tion thereof, which, if permitted to continue,
will ripen into an easement, and result in the
destruction of your oratrix's ownership and
right to said property; that it will also consti-
tute a continuing trespass of such nature that
it will cause to your oratrix irreparable dam-
age."

Appellee's counsel, in a word, thus further
states the substance of his bill:

"It is further alleged that the claim of the
city to the effect that the property in dispute is
a street is unfounded and erroneous; that it
was never dedicated as a street, or if there was
such a dedication, it was never accepted by the
city; that it was never opened or used as a
street; that appellee never dedicated any part
of it as a street, and can find no record of evi-
dence of any such dedication by any previous
owner. In short, the bill denies the city's claim
that the property in dispute is a public street."

No preliminary injunction issued upon or
after the filing of the bill, and the city of
Mobile installed the sewer and continues to
use the same. On the hearing, by amend-
ment of the bill these subsequent occurrenc-
es were alleged, and appropriate prayer
was added, for a mandatory injunction com-
pelling the removal of the sewer. The cause
was tried upon the pleadings and an agreed
statement of facts. There were certain ob-
jections to the legal sufficiency of portions
of the agreed statement of facts.

The city's answer makes a part thereof
certain proceedings had, in 1851, in the chan-
cery court of Mobile, in suit No. 1694, for
the partition of real properties among joint
owners. The reporter will set out in his
statement of facts the certified map of the
commissioners (in said partition suit No.

1694), Cleveland, Monroe, and Gale, of date March 18, 1861, Exhibit No. 1, appearing on the records of the chancery court, in Record Book R, pp. 810, 809, 807, of the lower division of the Bernoudy tract; and Exhibit No. 2, the map of ward book of the city, drawn by Lewis Troost as city engineer, purporting to embrace the lands in said city bounded on the east by Water street and traversed by Virginia, Maryland, and Pennsylvania streets from said Water Street East to the Mobile river. Said answer avers that there was a "general recognition of and the sale of lots of land by the parties to the partition suit in this [chancery] court numbered upon the docket thereof as 1694, by reference to the map filed by the aforesaid commissioners appointed in said partition suit, in this court on the 18th day of March, 1861, and recorded in this court in Book of Records R, pp. 806–810"; that the complainant "has bought and sold land in the city or Mobile, referring directly to the map of record in this court in Record Book R, pp. 807–810, and that such transactions upon the part of the complainant made an irrevocable dedication of said Virginia street from Old Water street to the channel of Mobile river, as shown upon the map made by the aforesaid commissioners, Monroe, Cleveland, and Gale, in the year 1852, and made a part of partition proceedings in cause 1694 of the records of this court." The city's answer admitted that the complainant owner the land described in the bill, "with the exception of a 50-foot street known as Virginia street, running near the northern boundary line of the land of said complainant from Old Water street to the Mobile river, as fully appears upon maps attached to this answer as Exhibits Nos. 1 and 2, and made a part of this answer." That exception is further described as follows:

The "northern edge of Virginia street projected east from Old Water street to the Mobile river would pass through the said premises and include a strip 50 feet wide, extending east and west entirely through the north side of the said premises, and so close to the north line as to leave thereof a strip of about 1 foot and 1 inch in width to the north side of the street."

The action of the city in contracting for the laying of the large sewer along and under Virginia street eastward to Mobile river is averred to be "lawful and proper," from the facts stated tending to show that the absolute ownership of the lands in question was in the city of Mobile as a dedicated street in that city from a distance west of Water street and extending east of Water street to the channel of Mobile river. It is further averred that the construction of said sewer was not an invasion of complainant's property right in the land along which the sewer would be laid to its discharge in said river.

[1, 2] The complainant must establish the material allegations of her bill; one, among others, being that she is the owner of said tract of land on which the sewer was constructed, and that the maintenance of the sewer would constitute a permanent appropriation of, and a continuing trespass to her said lands, resulting in an irreparable injury to complainant.

It will be observed that the city seeks no affirmative relief; that the burden remains on the complainant to prove the material allegations of her bill. Robinson v. Griffin, 173 Ala. 372, 56 South. 124. Generally speaking, negative averments need not be proved as pleaded. Where, however, the right to relief is grounded on such negative averments, the pleader must establish the truth of the same by evidence, "unless the subject-matter of the averment lies peculiarly within the knowledge of the other party." Givens v. Tidmore, 8 Ala. 745–751; Freeman v. Blount, 172 Ala. 655, 55 South. 293; 5 Cyc. Dig. Ala. Rep. 592, § 240; 10 R. C. L. 542; Spieres v. Parker, 1 T. R. 141; 1 Chitty on Pl. 206; 1 Greenl. Ev. 152, § 78. Such material allegations, to be proven by complainant, were (second paragraph of bill) that she "is the owner" of the land in question, and, in addition to the possession averred that "she has a good and valid title thereto" (fifth paragraph thereof); that "the said sewer will be permanent in its nature, and such taking and user of a portion of the said premises of your oratrix will involve and constitute a permanent appropriation thereof," etc., and "will result in the destruction of your oratrix's ownership and right to the said property"; and (sixth paragraph) "that the alleged claim of the said city of Mobile, to the effect that Virginia street extends east of Old Water street to the river, is erroneous and unfounded; that there never has been any dedication of the space in question as a street, or, if there ever was such a dedication, the same was never accepted by the city as a street; * * * that the city's aforesaid claim that it has the right to use the said space for the purpose aforesaid is entirely erroneous and unfounded, and that its acts done and proposed to be done pursuant to said claim as hereinabove alleged have constituted, and will continue to constitute, a trespass upon and appropriation of your oratrix's property of such kind and character as entitles her to an injunction."

Complainant's ultimate source of title was the decree of partition of lands in Mobile county among joint owners, in chancery suit No. 1694, wherein Brewer & Bell et al. were complainants and Smith et al. were respondents. The suit was instituted on September 20, 1851. The decree for partition and the appointment of commissioners (E. B. Gale, D. W. Goodman, W. T. Cleveland, and H. Monroe) was entered on January 7, 1852; the subsequent report of these commissioners, of the partition, was made about April 12th, and the several allotments to the owners, of

their respective tracts, were confirmed by the decree of April 16, 1852. Thus were the titles of the respective parties, to their several allotments, vested by the decree of confirmation (Pettit v. Gibson, 77 South. 703 [2]), as appears of record in the chancery court of said county, Minute Book D, pp. 603 to 605, inclusive, final record of cause No. 1694.

The allotment made by said commissioners to H. O. Brewer and Isaac Bell, Jr., together with the decree of confirmation, employs incomplete description as showing the locations and dimensions of streets. For example the allotment to Bell & Brewer was "one-half of the whole tract, to wit, the south half of the said tract extending eastwardly from Conception street to the channel of Mobile river, squares numbers 267, 268, 269, and 270, lying between Virginia and Maryland streets and Conception and Cedar streets. Squares numbers 247, 248, 249, 250, 251, 252, and 253, lying between Maryland and Pennsylvania streets, and Franklin and Scott streets. Also squares numbers 274 and 297 situate between Scott and Wilkinson streets and south of Maryland street. Also squares 294, 277, and 244, situate between Broad and Jefferson streets, and south of Pennsylvania street. Also the east half of squares 293, 278, and 243, situate between Broad and Marine streets, and south of Pennsylvania street. Also squares 292, 279, 242, 241, 280, and 291, situate between Murphy and Marine streets and south of Pennsylvania street. All of said lands are colored on said map dove color, and the names of Bell & Brewer marked thereon." The allotment to "Isaac Bell, Jr., and L. Gibbons," who owned one-half of one-twentieth of said tract, was as follows:

"A strip of land extending from Conception street to the channel of the river, adjoining on the north the lands of Bell & Brewer, and marked red on said map and having a frontage of about twenty-one feet."

And that to Robert W. Smith, who owned one-half of one-twentieth, was as follows:

"A strip of land extending from Conception street to the channel of Mobile river, adjoining Bell & Gibbons on the north and containing a frontage of about twenty-one feet. * * * Also one-eighth of square 243 adjoining the lands of Bell and Gibbons on the east and colored on said map blue"—and Robert W. Smith's allotment also referring to said map.

[3-5] Without the map referred to and made a part of the partition proceeding and decree therein, the streets that traverse these lands cannot be located, nor can the relative positions of the several squares be determined. That is, the decree and the map are interdependent. The term "squares" is generally used synonymously with "blocks" in describing urban premises. A square or block means a subdivision of a city or town inclosed by streets, whether occupied by building or inclosures or merely comprising vacant lots. Frazer v. Ott, 95 Cal. 661, 30 Pac. 793; Webster v. City of Little Rock, 44 Ark. 536, 551;

Olson v. City of Topeka, 42 Kan. 709, 712, 21 Pac. 219; State v. Deffes, 44 La. Ann. 164, 10 South. 597; Todd v. Kankakee & I. R. R. Co., 78 Ill. 530; Harrison v. People, 195 Ill. 466, 63 N. E. 191; State v. Natal, 42 La. Ann. 612, 7 South. 781, 782; Caldwell v. Rupert, 10 Bush (73 Ky.) 179; Broadway Bap. Church v. McAtee, 8 Bush (71 Ky.) 508, 8 Am. Rep. 480. The use of the descriptive words and numerals in designating the "squares," in the allotment and the decree confirmatory thereof, to Bell and Brewer, extending westwardly from Conception street, meant such blocks as were appropriate to cities, for convenience and for arrangement "into groups with streets and alleys between." Webb v. City of Little Rock, supra. Without other reference to the map than that contained in the decree of confirmation, such reference would constitute a dedication of the streets thereon to the public, and make said streets exceptions to the several allotments so made. In order to establish ownership to the street adjacent to one of said squares, the burden would rest on the claimant to delimit such exception. That is to say, to show that the property in question—in this case Virginia street east of Old Water street—was not in the excepted part, but was in the granted part. Southern Iron & Steel Co. v. Stowers, 189 Ala. 314, 66 South. 677; Maxwell Land Grant Co. v. Dawson, 151 U. S. 586, 14 Sup. Ct. 458, 38 L. Ed. 279; Hawkins v. Barney's Lessee, 5 Pet. 457, 8 L. Ed. 190. Especially is this obvious when it is noted of the description in the decree of the lands allotted to the Bank of Mobile (Virginia and Maryland streets being otherwise shown in the decree to be parallel) that Maryland street, east of Conception street, extended to the channel of the river. The several allotments were made with reference to the whole map as it then existed, and amounted to a dedication of the streets delineated on the map, to the city.

In the deed from Bell and Brewer, of date February 5, 1880, to John Lawrence Lavretta, complainant's ancester and predecessor in title, certain lands were described, to wit:

"The south half of all that portion of the southern division of the Bernoudy tract which lies east of Conception street and extends eastwardly to the channel of Mobile river" (except the designated tracts of lots).

This deed also purports to convey the designated lots in "squares west of Conception street," in square 267, and also lots No. 268, 250, 297, 278, 279, 242, 280, 241, and concludes with the general recital:

"All the above according to the numbers, dimensions and locations of streets as shown by the printed sales map of Bell and Brewer on record in probate court of Mobile county, said map being in conformity to the decree and partition in chancery court Record Book R, pages 806, 807, 808, 809, and 810."

Thus was established the identity of the map referred to as in the probate court with that in the chancery court, which identity

was acknowledged by complainant's immediate predecessor in title. That is to say, the two maps were one and the same. By this reference, complainant's ancestor recognized the correctness of the two maps, and by adoption authenticated (as to his lands) said map finding expression in the chancery court Record Book R, pp. 806–810. On said map or maps Virginia street is indicated as open from Conception street eastwardly to the channel of Mobile river.

[6] For the purpose of interpreting the conveyance, to ascertain the intention of the parties to the deed to said Lavretta, as to the existence, locations, dimensions, and extent of the streets, lots, and blocks indicated thereon, the map referred to in the decree and in the deed became a part of complainant's title. It has long been declared to be the law that where a map is referred to in a grant or deed as indicating what is intended to be conveyed, it is to be regarded as a part of the conveyance, and may be referred to for the purpose of aiding in the identification of the land showing its form, location, etc. Doe ex Dem. Miller v. Cullum, 4 Ala. 576. This rule has since been adhered to by our courts (Birmingham Sec. Co. v. Southern University, 173 Ala. 121, 55 South. 240; Thrasher v. Royster, 187 Ala. 350, 65 South. 796), and is recognized in other jurisdictions. 2 Dev. Deeds, 1020; 13 Cyc. 633, 634. And this is true of a reference to a plat in a description contained in a deed, although the plat so referred to does not conform to statutory requirements as to recordation, etc. Sanborn v. Mueller, 38 Minn. 27, 35 N. W. 666; Reed v. Lammel, 28 Minn. 306, 9 N. W. 858; Ferguson v. Winson, 10 Ont. 13, 23; Dougall v. Sandwich Co., 12 Upper Can., Q. B. R., 59. Mr. Justice Sayre said, of the burden of proof where a deed refers to another, thereby making it, for the purpose of interpretation, a part of said deed containing the reference:

"Plaintiff had purchased the entire tract, well described in his deed except the part previously conveyed by his grantor to Nixon, and since the plaintiff in ejectment must recover on the strength of his own title, and not the weakness of his adversary's, it was incumbent on plaintiff here to delimit the exception." Southern Iron & Steel Co. v. Stowers, 189 Ala. 314, 66 South. 677.

Of necessity, the same rule must obtain where the description in a conveyance referred to a map or plat with streets or roads indicated thereon as dedicated to the public. The party claiming such a street under such a conveyance must "delimit the exception." Therefore (applying the rule), under the averments of her bill in the case at bar, the complainant must show that the street in question was not dedicated and accepted as indicated on said map. The agreed statement of fact contains the admission that several early conveyances were made of lots lying in the subdivision in question; that "the said map appearing as aforesaid on pages 807, 809, and 810 of said Record Book R of the chancery court of Mobile county, Ala., has been generally or many times referred to as the map of the southern division of the Bernoudy tract, by various owners, in conveying by deed portions of said tract."

[7] In the family settlement between the heirs at law or next of kin of John Lawrence Lavretta (Betts v. Ward, 196 Ala. 248, 72 South. 110), the complainant, her sister, Philomena Lawrence Lavretta, and her brother, Constantine Lawrence Lavretta, there were mutual conveyances of date March 24, 1896, which must be construed together. In the deed of complainant and her sister, to the brother, the pertinent reference to the map is as follows:

"Also an undivided one-half interest in that strip of land known as the Bell and Gibbons tract which strip extends from the east side of Conception street to the channel of Mobile river, it being the identical strip of land forty feet wide, more or less, which was set apart and allotted to Bell and Gibbons by the chancery court, the decree and map showing correctly the dimensions of said strip, and its exact location recorded in Book R, by the records of the said chancery court at Mobile, and said map being of and relating to the southern division of the Bernoudy tract. Said strip is also shown in the records of the probate court in the printed sales book of Bell and Brewer."

In the deed from C. Lawrence Lavretta and wife to his sisters, the complainant and Philomena, lots in designated squares in the southern division of the Bernoudy tract were conveyed; and certain of the property is therein described as being of the "southern division of the Bernoudy tract, being a part of the property conveyed by Bell and Brewer to John Lawrence Lavretta by deed found on record in Deed Book 42 N. S., pages 150–51, etc. All of the above-described property as to numbers, location and description, are according to the sales map of Bell and Brewer, of record in the probate court, and said map being according to a decree or petition [meaning the partition had] in the chancery court, to be found in Book R, of the records of said court, pp. 806, 807, 808, 809, and 810." When the Lavretta deeds are considered together, the purpose is shown to effectuate a division of the lands theretofore purchased by their father from Bell and Brewer; and for the purposes of this case the two deeds must be construed as one instrument. When the recitals contained in the deed of Bell and Brewer to John Lawrence Lavretta, and the recitals in the subsequent deeds of the Lavrettas to each other, are so considered, and aided, as they must be, by the map recorded in the chancery court (in Record Book R, from pages 806 to 810), the setting apart and platting of the tract in question into urban subdivisions—streets, alleys, blocks, lots, etc.—by its said several owners, as so delineated on said map, must be held to have been intended and consummated in the adoption of the map by references. The fact that the apparent authority for the record of the

map is not disclosed does not destroy the binding and controlling force of said references to said drawing; and they must be held to operate an estoppel in pais against said party so recognizing the platting and dedication, and their successors in title. Sherer v. City of Jasper, 93 Ala. 530, 9 South. 584; Weiss v. Taylor, 144 Ala. 440, 39 South. 519; City of Demopolis v. Webb, supra; Morgan v. Railroad Co., 96 U. S. 716, 24 L. Ed. 743; London v. Oakland, 90 Fed. 691, 33 C. C. A. 237; City v. Oregon, 44 Or. 165, 74 Pac. 924; Elliott on Roads and Streets (3d Ed.) § 128. All successors in title were bound by this plat. Highland Realty Co. v. Avondale Land Co., 174 Ala. 326, 56 South. 716; Evans v. Railroad Co., 90 Ala. 54, 7 South. 758; Smith v. City of Opelika, 165 Ala. 630, 51 South. 821; Harn v. Dadeville, 100 Ala. 199, 14 South. 9.

As confirmatory of the early adoption of said map, we may observe that it found place in the records of the chancery court more than 50 years ago; and it has been many times referred to as the map of the southern division of the Bernoudy tract, in deeds to parcels of the land embraced therein. The agreed statement of facts admits that Bell and Brewer conveyed one of the lots of the lands so acquired by their purchase at the partition proceeding, to one Delphine Moog, on January 26, 1880 (before complainant's ancestor purchased the lot in question); that in the Moog deed the lots were described as being in the southern division of the Bernoudy tract according to the map of Bell and Brewer recorded in the probate court of Mobile county, and further described as a square bounded on the north by Virginia street, etc.; that Lyman Gibbons and wife, on March 6, 1863, conveyed to one Kelly an undivided one-half interest in a strip of land running east of Conception street to the channel of Mobile river, known as the strip marked "Bell and Gibbons" on the map of the southern division of the Bernoudy tract, made by Louis Troost, city surveyor, and recorded in Book R, 806, 809, and 810 of the Chancery Court, in Mobile County; that Chas. H. Froude and wife executed to King a deed of date March 4, 1871, conveying land according to "a plan of southern division of Bernoudy tract made by Louis Troost and recorded in Book R, Chancery Records, Mobile County."

It is also averred in the answer, and shown by the agreed statement of facts, that N. H. Brown and others, being the heirs at law of Archibald Brown, who was one of the parties complainant in the aforesaid cause No. 1694, executed to one George C. Forbes a deed to certain of the properties "situate in the southern division of the Registe Bernoudy tract in the city of Mobile," and more specifically described as "being the same land set apart and allotted to Archibald Brown, in the decree of the chancery court of Mobile county, rendered January 7, 1852, and of record in Book D, pages 515, 516, 517, 518, and 519, and in the same book at pages 602, 603, 604, 605, and 606, of said chancery court, and for the survey and map of said lands as returned by the commissioners appointed by said court, see book of chancery records of the said chancery court, Book R, pages 806, 807, 809, 810, 811, and 812."

[8] Thus it is shown that the intent on the part of the former owners preceding the Lavrettas, as to the strip of land in question, was to dedicate to the public, as streets in the city of Mobile, to the channel of the river, the lands indicated as streets on and by the maps and as set out in the chancery record Book R, p. 806 et seq. The public, as well as individuals, had a right to rely, and did rely, on this conduct of such former owners, so clearly indicative of their intent to dedicate. 4 McQuillin, Mun. Corp. § 1561; 1 Elliott on Roads & Streets (3d Ed.) §§ 138–140; East Birmingham Co. v. B. M. & F. Co., 160 Ala. 461, 49 South. 448.

[9] The sale and purchase of lots with reference to the plat in question was a sufficient dedication and acceptance of the streets as indicated on the plat (Smith v. Opelika, 165 Ala. 630, 51 South. 821; Highland Realty Co. v. Avondale Land Co., 174 Ala. 326, 56 South. 716; Doe ex dem. Kennedy v. Jones, 11 Ala. 63; Reed v. Mayor, 92 Ala. 339, 9 South. 161), even though a portion of Virginia street, east of Water street, and between that street and the river channel, was and is yet in the swamp, and incapable of the ordinary uses of a street. Its dedication, acceptance, and use, to Water street, and the sale of abutting lots, by the several owners, with reference to the map showing that, and other streets extending on to the channel of Mobile river, effectuated and rendered irrevocable the dedication, though the city had not theretofore opened or improved the same as a street to the river, otherwise than by the construction of the sewer in question. Demopolis v. Webb, 87 Ala. 659, 6 South. 408; Smith v. Opelika, supra; Harn v. Dadeville, 100 Ala. 199, 203, 14 South. 9; East Birmingham Co. v. B. M. & F. Co., supra.

In London & San Francisco Bank v. City of Oakland, 90 Fed. 691, 33 C. C. A. 237, the Circuit Court of the United States held that a map or plat of a city, signed and acknowledged by the owners of the land, and duly recorded, and by reference to which such owners partitioned the property by deeds between themselves, constitutes a dedication to the public of the streets shown thereon, and that it is immaterial by whom or for what purpose the map was originally made; that an intention to dedicate must be shown, yet it need not be proven by positive testimony, but is determinable by the peculiar facts and circumstances of the case, and may be inferred therefrom; that it is "more read-

ily inferred in the case of a street in a town or city than a country road"; that acceptance of dedication may be by act of the municipality, declaring certain named streets on a designated plat as "public streets," or by user by the public of a portion of the street dedicated as such by the owner of the land —the acceptance in the latter case being of the entire street, though its full use be deferred until necessity therefor shall arise. Barclay v. Howell, 6 Pet. 498, 506, 8 L. Ed. 477; Grogan v. Hayward (C. C.) 4 Fed. 161, 164; Coffin v. Portland (C. C.) 27 Fed. 412, 420; Tarldson v. Lime Springs, 92 Iowa, 187, 60 N. W. 658; Lakeview v. Lebahn, 120 Ill. 92, 9 N. E. 269, 272, 273; Heitz v. St. Louis, 110 Mo. 618, 625, 19 S. W. 735; Flersheim v. Baltimore, 85 Md. 489, 36 Atl. 1098.

It is not controverted that Virginia street has long been open, improved, used, and maintained by the city of Mobile, and by the public so used, to Conception street and in fact to Water street. And just here it may be observed that there are ancient evidences of the dedication and acceptance of Virginia street, east of Water street; the official map of the city in 1837 shows that street to have extended a block and a half east of Water street; the Troost map (1844) shows Virginia street as extending to the river, and likewise does the Pillans map (1868).

As we have already observed, a large section of Virginia street was open, improved, and used as a public street by the city and by the public, as that street was delineated in the chancery map in question. Of course, therefore, all ordinances thereafter enacted by the city governing body, affecting public streets generally, had application to Virginia street, as it was in fact dedicated by said former owner, to the channel of Mobile river, notwithstanding the fact that said street was not in fact open east of Water street. See extract from Code of Ordinances, City of Mobile 1897, pp. 407–415, set out in answer of the city of Mobile in the instant case.

[10] We are not of the opinion that the agreed statement of fact contained an admission, on the part of the city, of complainant's absolute ownership of the lands in question. No fair interpretation of that statement can be given that effect. It is recited therein that:

"Complainant owned and for many years has owned that part of the south two-thirds of the south half of the southern division of the Bernoudy tract which lies east of Water street, and the above-described 50-foot strip of land is situated just within the subdivision just described, the north line of said 50-foot strip being 13 inches south of the north line of the said south two-thirds of the south half of the southern division of the Bernoudy tract. The south line of said tract is some 245 feet south of the south line of said 50-foot strip"

—yet these words are immediately followed by the qualifying statement:

"If said 50-foot strip east of Water street is a public street, then complainant's title to that portion of the property is subject to, and incumbered by, all of the easements, rights, and privileges which the public and municipality have in public streets, but if said strip is not a public street, then complainant's title to all of said property is absolute and unincumbered."

Thus the agreed statement of facts presented the question, without the embarrassment of admissions, as contended for by appellants: Whether or not complainant owned said lots free of any easements, rights or privileges which the public and the city of Mobile had in Virginia street to the channel of Mobile river. After a careful consideration of this record, we are of the opinion that complainant's title is not absolute and unincumbered to the land in question, as found by the lower court, but that said tract or strip of land is subject to the paramount right of the city of Mobile to use it, as one of the city's public highways, to the channel of the Mobile river. See general authorities on the question of the paramount right of a municipality to the use of its streets for reasonable municipal purposes, under the police powers of government, collected in City of Birmingham v. Graves, 200 Ala. 463, 76 South. 395 et seq.

The decree of the circuit court of Mobile is reversed, and judgment is here rendered for the city of Mobile, and dismissing, at her cost, the bill of complainant, Delena L. L. Chapman.

Reversed and rendered.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.